[S. F. No. 11174.   In Bank.—October 7, 1924.]

EAST BAY MUNICIPAL UTILITY DISTRICT (a Public Corporation), Petitioner, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA, Respondent.

[1] RAILROAD COMMISSION — CONSTITUTIONAL LAW — AUTHORITY OF LEGISLATURE.—Under the amendment of October 10, 1911, to sections 22 and 23 of article XII of the constitution, the legislature is given plenary and unlimited authority in so far as such conferred powers are germane to the subject of regulation of public utilities.

[2] ID.—PUBLIC UTILITIES—VALUATION OF PROPERTY—REGULATION— CONSTRUCTION OF PUBLIC UTILITIES ACT.—The Railroad Commission in making a valuation of the property of a public utility for

the purpose of the acquisition of such property by condemnation or otherwise on the part of a political subdivision of the state in the manner provided by section 47b of the Public Utilities Act does not exercise a power conferred upon it by the legislature which is germane to the regulation of public utilities.

[3] ID.—LAW CREATING RAILROAD COMMISSION—REGULATION AND CONTROL OF PUBLIC UTILITIES—POLICE POWER.—The law creating the Railroad Commission and determining its powers of regulation and control of public utilities was enacted under the sanction of the police power.

[4] ID.—REGULATORY POWERS—NATURE OF.—Regulatory powers of the Railroad Commission over public utilities fall within (1) the right to regulate tolls and charges, to the end that fair compensation may be returned and excessive charges be forbidden; (2) the right to prevent discrimination upon the part of the public utility directed against those who employ it, or make use of its agencies, or the commodity which it furnishes; (3) the right to make orders and to formulate rules governing the conduct of the public utility, to the end that its efficiency may be built up and maintained and the public and its employees be accorded desirable safeguards and conveniences. Beyond these matters regulation, as regulation, does not, and from the very meaning of the word cannot, go.

[5] ID.—REGULATION—WHAT CONSTITUTES.—Regulation as such imports some affirmative act of the commission—the imposition of its will by order or rule on the public utility and affecting its conduct or welfare.

[6] ID.—AUTHORITY OF COMMISSION—POWER OF LEGISLATURE—TAKING OF PRIVATE PROPERTY.—The legislature has the power under sections 22 and 23 of article XII of the constitution to confer upon the Railroad Commission the power to take the property of a public utility under the right of eminent domain, provided such taking be germane to regulation and provided also that compensation be first paid for the property taken, and such taking may be affected without the intervention of a jury in fixing the award; but where the taking is effected not by the Railroad Commission, but by a state agency not embraced within the terms of said sections 22 and 23, the authority to take such property in such a way as to deprive the owner of a right of a jury trial, coupled with the right to compel the commission to make the valuation in lieu of a verdict, must be found, if at all, in some provision of the constitution other than in said sections 22 and 23.

[7] ID.—SECTION 23A, ARTICLE XII, CONSTITUTION—CONSTRUCTION.— The constitutional amendment of November, 1914, adding section

7.  See 10 Cal. Jur. 371.

23a of article XII, gives direct and specific authority to the legislature to confer on the Railroad Commission the power to make a valuation of the property of a public utility at the request of the state or of an authorized political subdivision thereof, and any legislation enacted thereunder could in an appropriate way, notwithstanding section 14 of article I of the constitution, deprive the owner of the utility of a jury trial in the event that the commission be called upon to make such valuation, but the right of the legislature is limited in the conferring of such powers to the state and to the particular political subdivisions thereof named in said section 23a.

[8] Id.—Petition for Valuation of Property—Parties—Municipal Utility District.—A municipal utility district is a separate and distinct governmental entity or political subdivision not named in section 23a, article XII, of the constitution, and is not entitled under said section to petition the Railroad Commission to make a valuation of property of a public utility for the purpose of acquiring it by condemnation or otherwise.

[9] Id.—Construction of Section 23a, Article XII, Constitution—State and Its Agencies.—In particularly naming the state, with the other agencies thereof, in section 23a of article XII of the constitution, it was intended that the designation "the state" should apply to the state as a governmental entity and should not include every agency which might exercise a portion of the sovereignty.

[10] Id.—Municipal Utility District—Acquiring Water Supply—Municipal Water District.—The fact that a municipal utility district is taking steps to acquire a water supply for the district and its inhabitants does not constitute it to that extent a "municipal water district" as contemplated by section 23a of article XII of the constitution as originally framed.

[11] Id.—Municipal Utility District—Power to Acquire Water System Outside District—Service Outside District.—A municipal utility district has power to acquire a water system without, or partly without, the district, and to supply service without the district, where the service was being rendered at the time of the acquisition, as it would acquire the property subject to the burden or servitude of continuing the service.

[12] Id. — Acquirement of Water System by Municipal Utility District—Continuance of Service—Sections 1240, 1241, Code of Civil Procedure.—Where it is proposed to continue the use of the water to the same territory to which it has theretofore been appropriated, and the territory and the peoples thereof are not to be disturbed in the use to which the water is put and are to enjoy uninterrupted use thereof, the provisions of sections 1240 and 1241

of the Code of Civil Procedure, as amended in 1915, do not prohibit the acquisition by a municipal utility district of the water system supplying said service.

(1) 12 C. J., p. 806, sec. 237 (1926 Anno.).   (2) 20 C. J., p. 1023, sec. 414.   (3) 12 C. J., p. 928, sec. 438 (1926 Anno.).   (4) 12 C. J., p. 806, sec. 237 (1926 Anno.).   (5) 34 Cyc., p. 1032 (1926 Anno.). (6) 20 C. J., p. 549, sec. 35 (1926 Anno.), (7) 20 C. J., p. 1024, sec. 414 (1926 Anno.).   (8) 20 C. J., p. 1024, sec. 414 (1926 Anno.).   (9) 20 C. J., p. 1024, sec. 414.   (10) 20 C. J., p. 1024, sec. 414 (1926 Anno.).   (11) 40 Cyc., p. 769 (1926 Anno.).   (12) 40 Cyc., p. 769 (1926 Anno.).

PROCEEDING in Mandamus to require the Railroad Commission of California to make a valuation of certain properties in contemplation of the acquisition of the same by a municipal utility district under condemnation or other proceedings.   Writ denied.

The facts are stated in the opinion of the court.

William J. Locke, Edward F. Treadwell, Lemuel D. Sanderson and R. S. Laughlin for Petitioner.

McKee, Tasheira & Wahrhaftig, *Amici Curiae.*

Carl I. Wheat, Woodward M. Taylor and Hugh Gordon for Respondent.

SHENK, J.—This is an application for a writ of mandate to compel the respondent Railroad Commission to fix and determine the just compensation to be paid by petitioner for the lands, properties, and rights of the East Bay Water Company in contemplation of an eminent domain or other appropriate proceeding.   The matter is submitted on a general demurrer to the petition.   There is therefore no controversy as to the facts.

It appears that the petitioner is a municipal utility district organized under and pursuant to an act of the legislature approved May 23, 1921 (Stats. 1921, p. 245) ; that the district consists of municipalities only and comprises all of the territory situated in the counties of Alameda and Contra Costa and included within the boundaries of the incorporated cities of Oakland, Alameda, Berkeley, Richmond,

El Cerrito, Albany, Emeryville, and San Leandro; that after the necessary preliminary proceedings, which need not here be recited, the board of directors of the district, on the eighth day of April, 1924, adopted a resolution determining and declaring that the public interest and necessity of the district demanded the acquisition of the entire water system of the East Bay Water Company, a corporation owning and operating a water system supplying water to the municipalities within the district and also supplying certain territory adjacent to or in the neighborhood of the district and which is described as the city of Piedmont and certain unincorporated territory in the counties of Alameda and Contra Costa outside of the district. By this resolution it was also declared that the district would take and acquire the said system subject to the duty to continue said service to such adjacent and neighboring territory. Thereafter, on April 11, 1924, and pursuant to said resolution, the district filed a petition with the Railroad Commission requesting that body to ascertain the value of the properties and rights of the East Bay Water Company, for the purpose of submitting to the electors of the district estimates of the cost of acquiring the public utility and fixing and determining the just compensation to be paid by the district under the law for the taking of the property. The Commission thereupon issued an order requiring the parties interested to show cause why it should not proceed to hear and determine the matters set forth in the petition. At the hearing on the order to show cause the East Bay Water Company and others financially interested in its properties appeared and objected to the hearing of said matter on the ground that the Commission had no jurisdiction to entertain the same or to ascertain the value of the property of the company or to fix the just compensation to be paid to the company by the district. Thereupon, the Commission, after considering said objections, refused to proceed with the hearing of the petition and dismissed the same. Following said order of dismissal the petition herein was filed.

Briefly stated, therefore, the petitioner has requested the Railroad Commission to fix a valuation on the entire system of the East Bay Water Company, said system being dedicated to service, both within and without the district, so that such valuation may be used by the district in a propo-

sition which it intends to submit to the electors within the district to acquire said system and the whole thereof by eminent domain proceedings or otherwise. It based its request on subsection (b) of section 47 of the Public Utilities Act as amended in 1917 (Stats. 1917, p. 262), wherein it is provided that "any county, city and county, incorporated city or town, municipal water district, irrigation district, public utility district or any other public corporation," may at any time file with the Railroad Commission a petition setting forth that it intends to acquire a public utility plant by eminent domain proceedings or otherwise and requesting the Commission to make a valuation thereof. In the same section it is made the duty of the Commission to make such valuation when so requested. The Commission denied its jurisdiction to entertain the petition principally on the ground that its duty to make such valuation is not germane to the subject of the regulation of public utilities, that the power of the legislature to require the Railroad Commission to make such valuation is derived solely from section 23a of article XII of the constitution, and that the petitioner is not such a governmental entity as is privileged to require a valuation under that section. It is the contention of the petitioner that the powers conferred on the Commission by subsection (b) of section 47 of the Public Utilities Act are germane to the subject of the regulation of public utilities and that in the enactment of said section the legislature has regularly pursued its authority under sections 22 and 23 of article XII of the constitution.

On October 10, 1911, said sections 22 and 23 were amended so as to provide for a reorganization of the Railroad Commission and an enlargement of its powers. Therein it was declared that the authority of the legislature to *confer powers* upon the Railroad Commission respecting public utilities should be plenary and unlimited by any provision of the constitution. [1] It is well settled that the authority of the legislature under the broad provisions of those sections is plenary and unlimited in so far as such conferred powers are germane to the subject of regulation and control of public utilities (*Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *City of Pasadena* v. *Railroad Com.,* 183 Cal. 526 [10 A. L. R. 1425, 192 Pac.

25]). At the special session of the legislature of 1911 the Public Utilities Act was adopted (Stats. Ex. Sess. 1911, p. 42). In section 47 thereof the Commission was given "power to ascertain the value of the property of every public utility in this state and every fact which in its judgment may or does have any bearing on such value." Obviously, the power thus conferred upon the Commission was indispensable to the proper exercise of its power to fix rates and to make other regulatory orders wherein values form a necessary basis for well considered action. In the original section we find no duty imposed upon the Commission to value the property of an existing public utility at the request of the state or of any political subdivision thereof, but by enactment approved June 11, 1913 (Stats. 1913, p. 683), said section 47 was amended so as to provide that "any county, city and county, city or town, or municipal water district" could file with the Commission a petition setting forth, among other things, that it was intended to acquire the public utility under eminent domain proceedings or otherwise and requesting the Commission to make a valuation thereof. This section was incorporated in the re-enactment of the Public Utilities Act in 1915 (Stats. 1915, p. 115), wherein it was provided that "any county, city and county, incorporated city or town, or municipal water district, county water district, irrigation district, public utility district or any other public corporation" may at any time petition the Railroad Commission to value the property of a public utility in contemplation of acquiring the same by condemnation or otherwise. Said section 47 was again amended in 1917 (Stats. 1917, p. 262), but in no way changing the enumeration of the political subdivisions whose right to compel a valuation was declared. The section as last amended was, however, divided into subsections designated (a) and (b). In subsection (a) the provisions conferring powers on the Commission to make valuations for purposes of regulation as conferred in the original section were re-enacted. In subsection (b), which will be referred to herein as section 47b, the procedure under which the Commission is required to make the valuation and file its finding is set forth. [2] The question, therefore, on this branch of the case, is: Does the Railroad Commission in making the valuation of the property of a public utility

for the purpose of the acquisition of such property by condemnation or otherwise on the part of a political subdivision of the state in the manner provided by section 47b of the Public Utilities Act exercise a power conferred upon it by the legislature which is germane to the regulation of public utilities? If it exercise a power which is so germane it must follow that by said section 47b the legislature has properly pursued its authority under sections 22 and 23 of article XII of the constitution. On the other hand, if it be not so germane the petitioner must look for its right to compel the Commission to make such valuation solely to section 23a of article XII of the constitution, and-if the petitioner has not the right to demand such valuation under that section, the respondent was justified in its refusal to proceed therewith.

To understand the nature of the functions exercised by the Commission in responding to a petition for valuation, the powers conferred by and the procedure outlined in said section 47b should be noted. Upon the filing of the petition by an authorized public body the Commission is required to make an order directing the owners and claimants of the property to show cause, if any they have, why the Commission should not proceed to hear the petition and fix the valuation as requested. If the Commission take jurisdiction of the matter (and it is required to do so in all proper cases) it must fix a time and place at which a hearing shall be had. After such hearing, on notice to the parties interested, the Commission is required to file its written finding fixing in a single sum the just compensation to be paid by the public body for such property. If the owners of the property be satisfied with the valuation so fixed such owners may file with the legislative body of the political subdivision a written stipulation consenting and agreeing to accept the compensation so fixed by the Commission, whereupon the price is paid and the property is transferred without a court proceeding. If the owners do not file such stipulation the political subdivision must commence an action in a court of competent jurisdiction to take such property under eminent domain proceedings. In such court proceedings the finding of the Commission fixing the compensation is "final and shall not be subject to modification, alteration, reversal or review by any court of this state." The court, if it decides

that condemnation should be ordered, is required to enter judgment in favor of the complainant in said action fixing as the amount to be paid to the owners the compensation fixed by the Commission and that judgment is "final and shall not be subject to modification, alteration, reversal or review," except as to incidental matters not material here. The section also provides that the rights conferred upon public bodies named therein to require such valuation shall not be considered as an exclusive mode of procedure, but shall be considered as an alternative and cumulative procedure which may be followed by any such public body in addition to any other method of procedure provided for in law for the taking by such public body of such public utility or lands, properties, and rights thereof under eminent domain proceedings, in accordance with the law of this state. It will be noted that the public body is not required to pursue the course outlined in the section but may proceed independently of the Commission and prosecute an action in condemnation. When it does proceed under the section it simply avails itself of the privileges thereby granted to bring into operation the facilities, expert and technical, which the Commission has on hand in connection with the exercise of its regulatory powers. But the Commission exercises no regulatory power in the fixing of such valuations. It does not predicate the exercise of any power possessed by it under the law on the valuations so fixed. The valuations determined by it and upon which it bases some act of regulation or control are made pursuant to section 47 as originally adopted and as continued in the present section 47a. (See *Marin Water etc. Co.* v. *Railroad Com.*, 171 Cal. 706 [Ann. Cas. 1917C, 114, 154 Pac. 864].) In that respect the powers conferred by said section 47a are concededly germane to the subject of regulation and control of public utilities, but in considering the purpose and effect of section 47b, it will be noted that it does not in any proper sense confer powers of regulation upon the Commission. On the contrary, its plain purpose and effect is to confer upon the political subdivisions therein named the power to compel the Commission to make a valuation which, when made and filed, shall be of such conclusive character as to be binding on the court and all interested parties. Furthermore, by section 47b the legislature has

attempted to confer upon the cities, counties, and other political subdivisions therein named the power to initiate proceedings in the course of which the owner of the utility is denied the constitutional right granted by section 14 of article I of the constitution to have the compensation fixed by a jury. We cannot conclude that this result can be accomplished by the legislature even under the broad powers granted to it by said sections 22 and 23 of article XII. Certainly, it cannot be said that the conferring of such powers upon the designated political subdivisions of the state and the compelled action of the Commission, with the resultant denial of a constitutional right to the owners of the utility, are germane to the subject of regulation of public utilities *by the Commission.*

[3] The law creating the Railroad Commission and determining its powers of regulation and control of public utilities was enacted under the sanction of the police power (*Gray* v. *Reclamation Dist No. 1500,* 174 Cal. 622, 641 [163 Pac. 1024]; *Pacific Telephone etc. Co.* v. *Eshleman, supra).* [4] Those regulatory powers, as was said in the case last cited, fall within "1. The right to regulate tolls and charges, to the end that fair compensation may be returned and excessive charges be forbidden; 2. The right to prevent discrimination upon the part of the public utility directed against those who employ it, or make use of its agencies, or the commodity which it furnishes; 3. The right to make orders and to formulate rules governing the conduct of the public utility, to the end that its efficiency may be built up and maintained and the public and its employees be accorded desirable safeguards and conveniences. Beyond these matters regulation, as regulation, does not, and from the very meaning of the word cannot, go." [5] Regulation as such imports some affirmative act of the Commission—the imposition of its will by order or rule on the public utility and affecting its conduct or welfare. Under section 47b the Commission is not the actor. It does not proceed on its own initiative. Its action is compelled by the political subdivision seeking the service of the engineers and other experts employed by the Commission. When the valuation is fixed the Commission can make no order based thereon. It does no more than file its finding as to the total valuation of the property. There its function under the

statute ceases with reference to the particular subject. When it acts in the capacity required of it under the law it exercises a judicial function (*Marin Water etc. Co.* v. *Railroad Com., supra*). Its processes in that respect may be likened to the finding of a jury on a question of fact in a civil action. The finding of the jury is ineffectual unless it serve as a basis for an enforceable order or judgment. Just as here the finding of the Commission is ineffectual unless such finding be approved and accepted by the owners of the utility or unless the court in the condemnation proceeding render a judgment based thereon. Or the action of the Commission may further be likened to that of a referee appointed under the authority of law to take evidence and submit to the court a finding of fact. When such finding is submitted the powers of the referee are at an end. Again, its functions may be likened to that of an appraiser whose appraisement is binding upon the parties and upon the court. It is of no consequence, so far as the nature of the power of the referee or appraiser is concerned, that the finding is made conclusive evidence in a court proceeding in eminent domain. It does not affect the nature and quality of the act of the referee. Petitioner concedes that there is a distinction between regulation under the police power and proceedings in eminent domain. That distinction has been declared by this court to be incontestably true to this extent: "Where the police power is legitimately exercised, uncompensated submission is exacted of the property owner if his property be either damaged, taken or destroyed. In the exercise of the power of eminent domain, compensated obedience for the taking or damaging of his property is the owner's constitutional right." (*Gray* v. *Reclamation District No. 1500,* 174 Cal. 622, 640 [163 Pac. 1024, 1032].) But petitioner contends that since the voluntary sale or transfer of the property of the public utility must under existing law be approved by the Railroad Commission in the exercise of its regulatory power, therefore the fixing of the value at which the property *must* be transferred is for the benefit of the investing public having an interest in the securities of the public utility, and therefore cognate to the regulation and control of such public utility. There would be more force in petitioner's argument if the fixing of the valuation by the Commission under section 47b were necessary to such

enforced transfer. But it is not. The powers of the Commission are called into operation wholly at the option of the requesting political subdivision. The latter may request such valuation or it may not. If it choose it may proceed in the ordinary way by an action in condemnation without the aid of the Commission, in which event a jury trial would be available to the owner. Essential to regulation is the power to enforce the regulatory mandate. If compliance with the order be optional the regulation is of course ineffectual. So here, if the political subdivision seeking to take over the property of a public utility may do so without the aid of the Commission and in spite of its power to make a valuation, it is difficult to see how the investing public is protected or was intended to be protected by the Commission's valuation. As the law now stands it may be protected or not wholly at the option of the public body seeking to acquire the utility. [6] There is no question but that the legislature has the right under said sections 22 and 23 to confer upon the Commission the power to take the property of a public utility under the right of eminent domain provided such taking be germane to regulation and provided also that compensation be first paid for the property taken; and such taking may be effected without the intervention of a jury in fixing the award (*Pacific Telephone etc. Co.* v. *Eshleman, supra*). But where the taking is effected not by the Railroad Commission but by a state agency not embraced within the terms of sections 22 and 23, the authority to take such property in such a way as to deprive the owner of a right of a jury trial, coupled with the right to compel the Commission to make the valuation in lieu of a verdict, must be found, if at all, in some provision of the constitution other than in said sections 22 and 23. This conclusion is fortified by the legislative construction placed upon section 47 of the Public Utilities Act as amended in 1913, section 47b as now in force and sections 22 and 23 of article XII of the constitution.

During the legislative session of 1913 there was pending in this court and undetermined the petition for a writ of review (filed March 6, 1913), entitled, *The Pacific Telephone & Telegraph Company* v. *John M. Eshleman et al., supra.* This matter involved the scope and effect of sections 22 and 23 of article XII of the constitution in so far as the declared

unlimited powers of the legislature in conferring authority on the Railroad Commission were concerned. While these questions were pending and undetermined the legislature, also in 1913, submitted to the electors of the state an amendment to the constitution to be voted on at the general election in November, 1914, by adding a new section to be known as section 23a (Stats. 1913, p. 1744), and to read as follows: "The railroad commission shall have and exercise such power and jurisdiction as shall be conferred upon it by the legislature to fix the just compensation to be paid for the taking of any property of a public utility in eminent domain proceedings by the state or any county, city and county, incorporated city or town, or municipal water district, and the right of the legislature to confer such powers upon the railroad commission is hereby declared to be plenary and to be unlimited by any provision of this constitution. All acts of the legislature heretofore adopted, which are in accordance herewith, are hereby confirmed and declared valid." If the right, duty, and obligation of the Commission as contemplated by that section could be derived from the legislature through said sections 22 and 23, there was no necessity for the legislature in 1913 to submit to the electors of the state the amendment adding section 23a. There can be no doubt that the legislature was apprehensive that its authority under said sections 22 and 23 was not sufficient to enable it to vest in the political subdivisions named in section 47 of the Public Utilities Act the power to take through the medium of the Railroad Commission the property of a public utility in contravention of section 14 of article I of the constitution and that by the enactment of said section 47 it had transcended its powers. Otherwise, it would not have submitted to the people the proposed amendment to the constitution adding said section 23a. In the argument sent to the voters just prior to the general election of 1914, in connection with the adoption of the new section 23a, it was stated: "The state legislature, at its last session, adopted an act authorizing the state railroad commission to determine the just compensation to be paid by any county, city and county, incorporated city or town or municipal water district for the acquisition, in eminent domain proceedings, of any public utility desired to be acquired and operated by such county, city and county, in-

corporated city or town or municipal water district. . . . Several of the smaller cities have taken advantage of this law and asked the railroad commission to assist them. It was thought the law was constitutional, but some question was suggested, and, therefore, as an extra precaution the legislature submitted this constitutional amendment approving and ratifying the act and authorizing the adoption of any similar act. Since the adjournment of the legislature the state supreme court has, in the case of the *Pacific Telephone and Telegraph Company versus Eshleman et al. . . .* decided in effect, that such an act (referring to section 47 of the public utilities act as amended in 1913) is valid under the present constitution. However, the adoption of this amendment will make even more certain the validity of such legislation adopted for the benefit of all incorporated cities and towns and municipal water districts throughout the state.'' The apprehension of the legislature as indicated in the argument to the voters was proved to be well founded, for, in December, 1913, this court rendered its decision in the case of *Pacific Telephone etc. Co. v. Eshleman, supra,* wherein it was declared *inter alia* that the constitution has authorized the legislature to confer powers upon the Railroad Commission touching public utilities unrestricted by other constitutional provisions, and that the legality of such powers as the legislature has or may thus confer upon the Commission, if *cognate and germane to the subject of the regulation of public utilities* may not be questioned under the state constitution. But this court in that case did not ''in effect'' as stated in the argument, or otherwise, decide that said section 47 of the Public Utilities Act was constitutional. The argument assumed that it had been declared in that case that the authority of the legislature to confer powers on the Railroad Commission was without limitation so long as the subject matter of the legislation affected public utilities and seems to have lost sight of the fact that what the court decided in that case was that the authority of the legislature to confer powers on the Railroad Commission could not be questioned under the state constitution provided such conferred powers were cognate and germane to the subject of regulation and control of public utilities.

[7]  The proposed constitutional amendment adding sec-
tion 23a was adopted at the general election in November,
1914.  We find in that amendment direct and specific au-
thority for the legislature to confer on the Railroad Commis-
sion the power to make a valuation at the request of the
state or of an authorized political subdivision thereof.  Be-
cause of the inclusion therein of the clause, "and the right
of the legislature to confer such powers upon the Railroad
Commission is hereby declared to be plenary and to be un-
limited by any provision of this constitution," it may be
assumed that any legislation enacted thereunder could in
an appropriate way, and notwithstanding section 14 of
article I of the constitution, deprive the owner of the utility
of a jury trial in the event that the Commission be called
upon to make such valuation.  (*Marin Water etc. Co.* v.
*Railroad Com., supra.*)  Such legislation was enacted both
by the legislature of 1915 (Stats. 1915, p. 139) and of 1917
(Stats. 1917, p. 261), but we are convinced that the right of
the legislature is limited in the conferring of such powers
to the state and to the particular political subdivisions
thereof named in said section 23a and of which the petitioner
is not one.  As hereinbefore noted, that section provides that
the Railroad Commission shall have and exercise such
powers and jurisdiction as shall be conferred upon it by the
legislature to fix the just compensation to be paid for the
taking of any property of a public utility in eminent domain
proceedings by "the state or any county, city and county,
incorporated city or town, or municipal water district."
[8]  The petitioner is a "municipal utility district," a
separate and distinct governmental entity or political sub-
division not named in the constitutional section and not
entitled under section 23a to petition the Railroad Commis-
sion to make the valuation.  The legislature of 1915 at-
tempted to enlarge upon the enumeration of such political
subdivisions by providing in section 47 that "any county,
city and county, incorporated city or town, municipal water
district, county water district, irrigation district, public
utility district or other public corporation may at any time
file with the commission a petition," etc. (Stats. 1915,
p. 139.)  It is contended by petitioner that because section
23a gives "the state" the right to initiate such a proceed-
ing, therefore the state, acting through the legislature, may

designate the agencies by which the state shall exercise this power and that the legislature has, by section 47 as amended in 1915, properly designated a municipal utility district as one of such agencies. But if this be so, no satisfactory reason appears why the legislature was at pains to enumerate in section 23a the different state agencies as well as the state itself. It is apparent and must be assumed that the section was framed *ex industria* to include only the state, and the particular named agencies thereof, and to exclude those not named. (*In re Madera Irr. Dist.*, 92 Cal. 296, 342 [27 Am. St. Rep. 107, 14 L. R. A. 755, 28 Pac. 272, 675]; *Bettencourt* v. *Industrial Acc. Com.*, 175 Cal. 559 [166 Pac. 323]; *Robertson* v. *Library Trustees*, 136 Cal. 403 [69 Pac. 88]; *Mesmer* v. *Board etc.*, 23 Cal. App. 578 [138 Pac. 935]; *City of Oakland* v. *Garrison, ante,* p. 298 [228 Pac. 433].) [9] It is clear that in particularly naming the state, together with the other agencies thereof, the legislature intended that the designation "the state" should apply to the state as a governmental entity and should not include every agency which might exercise a portion of the sovereignty. Again, we are aided by the legislature in arriving at this conclusion. At its session of 1923 the legislature submitted to the people an amendment to section 23a enlarging the enumeration of the agencies which may be entitled to such valuation. (Stats. 1923, p. 1656.) That proposed amendment is to be voted on at the general state election in November, 1924. In the proposed amendment the enumeration is as follows: "The state or any county, city and county, incorporated city or town, municipal water district, *irrigation district or other public corporation or district.*" (Italics added.) The proposed amendment also contains the provision that "all acts of the legislature heretofore adopted which are in accordance herewith are hereby confirmed and declared valid." Undoubtedly, the enactment of the legislature which the framers of the proposed amendment had in mind in incorporating therein the confirmatory clause was section 47b of the Public Utilities Act as adopted in 1917. Under the present condition of the law it must be concluded that the petitioner is not one of the public agencies of the state authorized to petition the respondent to make the valuation sought or to compel the making thereof.

[10]   We are not impressed with the argument of counsel for petitioner that because the petitioner is taking steps to acquire a water supply for the district and its inhabitants, therefore it is to that extent a "municipal water district" as contemplated by said section 23a as originally framed. The legislature in 1909 provided for the incorporation, organization and management of "municipal water districts." (Stats. 1909, p. 1097.) Again, the legislature in 1913, at the same session at which it proposed the constitutional amendment adding section 23a to article XII, refers to a "municipal water district" as a separate public entity in amendments to sections 640, 1240, and 1241 of the Code of Civil Procedure. (Stats. 1913, pp. 246, 547, 549.) The petitioner is authorized to acquire works for the purpose of supplying the inhabitants of the district with light and also with means for the disposition of sewage. By the same reasoning it might be contended that when the petitioner should take steps to acquire a lighting system it would thereby become a "lighting district," as such districts have been provided for by the legislature. (Stats. 1909, p. 551.) Or it might be contended that when the petitioner might proceed to provide a means for the disposition of sewage it would thereby become a "sewage district" as provided for by statute. (Stats. 1909, p. 1011.) We cannot ascribe to the legislature the intention to endow the petitioner with any such chameleon characteristics.

[11]   The determination of the principal contention of the respondent in its favor and adversely to the petitioner's right to compel the valuation would be sufficient upon which to base a denial of the peremptory writ sought herein, but counsel appearing by leave of court and on behalf of the East Bay Water Company has advanced certain other objections to the right of the petitioner to proceed which seem to demand consideration at this time in order that further litigation involving the same questions may be avoided in the event the petitioner hereafter may become authorized to seek a valuation on the part of the Commission. It is insisted that if the petitioner has the legal right to demand a valuation by the Railroad Commission and if the Commission should make such valuation the petitioner would have no power under the statute authorizing its formation to supply water to territory and peoples without the dis-

trict. The act provides that a municipal utility district shall have power "to acquire, construct, own, operate, control or use, within or without, or partly within and partly without, the district, works for supplying the inhabitants of said district and municipalities therein . . . with . . . water . . . and to do all things necessary or convenient to the full exercise of the powers herein granted. . . . Whenever there is a surplus of water . . . above that which may be required for such inhabitants or municipalities within the district, such district shall have power to sell or otherwise dispose of such surplus outside of the district. . . . " Direct authority is thus given to the district to acquire property *without* the district, but because the power of the district to sell water without the district is limited to the "surplus," it is contended that the valuation if made would be idle and of no avail, for the reason that the district has no authority under its organic act to furnish water outside the district except as the same may be surplus. The resolution of the board of directors of the district declares the necessity of acquiring the entire system, and that the same is indivisible and constitutes one system. In the same resolution the district declares that it would take the property subject to the duty to continue to supply the outside territory. The petitioner also sets forth the same facts and declarations in the petition herein. It is also further alleged that about ninety-three per cent of the water is supplied to people within the district and about seven per cent to people outside the district. Whether or not it be the declared policy of the district to continue such outside use, it would be its legal duty to do so as the successor of the East Bay Water Company (*South Pasadena* v. *Pasadena Land etc. Co.,* 152 Cal. 579 [93 Pac. 490], and cases cited). In that case the city of Pasadena was seeking to acquire the water works and system of the defendant corporation which was serving water users outside the city and within the corporate limits of the plaintiff. The suit was brought to enjoin the defendants from transferring its properties. One of the questions presented was whether the city could acquire the property subject to the duty theretofore imposed on the water company to furnish water to the inhabitants of the plaintiff and be compelled to continue that service. It was held that the city of Pasadena could be compelled to put the water

to the same use as the water company.   It is true that the
city of Pasadena had charter power to supply water to per-
sons who lived outside the city limits, but it was contended
that the supply of water outside its limits was not a muni-
cipal affair and therefore the city was subject to the limita-
tions of the general law with reference to surplus water.
It was held in effect that the supplying of water to outside
territory under the circumstances was necessarily a matter
incidental to the main purpose of supplying water to its
own inhabitants.   With reference to the duty of the city of
Pasadena to continue the service and with reference to the
character of the water as surplus water the court said at
page 594: ''It will be obliged to put it to the same use as
fully as that company is now compelled to do.   Water which
is in this manner dedicated to the use of an outside com-
munity cannot be at the same time surplus water subject
to sale to others.   The sale is already, in effect, accom-
plished.   The city of Pasadena, with respect to this part of
the water, will hold title as a mere trustee, bound to apply it
to the use of those beneficially interested.''   So in this case
the petitioner would be acquiring the property outside the
district as necessary or convenient to the full exercise of the
granted powers and would be required to discharge its duties
to the outside consumers as required by law.   The peti-
tioner has the power to acquire the works and system out-
side the district.   If it should do so it would acquire such
property subject to the burden or servitude of continuing
the service and on no just principle could it continue to hold
the property outside the district discharged thereof.   (See
*Hewitt* v. *San Jacinto etc. Irr. Dist.*, 124 Cal. 186 [56 Pac.
893].)   To acquire the property with the burden so at-
tached would not, therefore, be in excess of the powers of the
district.

[12]  It is also contended by counsel representing the
water company that under the provisions of sections 1240
and 1241 of the Code of Civil Procedure, as amended in
1915, the petitioner has not the legal right to condemn the
property of the water company dedicated to the use of
territory and peoples without the district, and it is asserted
that the case of *Mono Power Co.* v. *Los Angeles*, 284 Fed.
784, is conclusive in favor of the water company's con-
tention.   We cannot so conclude.   In that case the city of

Los Angeles was seeking to condemn the property of a utility which was dedicated to the use of communities lying wholly without the boundaries of the city of Los Angeles and no part of which had ever been dedicated to the use of the city of Los Angeles. It was proposed to take the property wholly away from the territory and peoples to which it had been dedicated and devote it to territory to which it had never been dedicated. The question in that case was tersely stated by the court as follows: "The question we have to determine is, not whether the City of Los Angeles has the right to condemn the property of a private corporation appropriated to a public use in the service of the City of Los Angeles and its inhabitants, but whether the City of Los Angeles has the right to condemn the property of a private corporation whose property has been already wholly appropriated to the public use of some other county, municipality, incorporated city and town and the inhabitants thereof." After discussing the rule of construction applicable to the case, the court further said: "Applying this well-known rule of construction to these two amendments, we must hold that it was the purpose of the legislature to provide that property of a private corporation, as well as property of a municipal corporation, appropriated to the public use in one county, may not be appropriated to a public use by any other county, city and county, while such property is so appropriated and used." It was conceded and asserted by counsel for the city in that case that the proposed use by the city was "absolutely inconsistent with the continuance of any use of the property for any utility purpose by the defendant." The declared purpose of the city, therefore, brought the case within the prohibition of said sections 1240 and 1241, wherein it is provided: "But property appropriated to the use of any county, city and county, incorporated city or town or municipal water district, may not be taken by any other county, city and county, incorporated city or town, or municipal water district, while such property is so appropriated and used for the public purposes for which it has been so appropriated." As pointed out by counsel for petitioner, the water company is somewhat inconsistent in urging this point for the reason that a municipal utility district is not one of the political subdivisions named as coming within the statutory disability,

but, assuming that the sections are broad enough to apply to petitioner, we cannot conclude that the declared purposes of the petitioner herein bring it within the prohibition of the code sections referred to. It is here proposed to continue the use of the water to the same territory to which it has heretofore been appropriated. The territory and the peoples thereof are not to be disturbed in the use to which the water is now put and are to enjoy an uninterrupted use thereof, if the petitioner succeeds in its purpose. In other words, the change will result not in the disturbance of the use or appropriation of the water but in the agency authorized by law to administer the trust. We find nothing in the sections referred to which would prohibit such a change.

The petitioner contends that the prohibitive clauses of said sections 1240 and 1241 are unconstitutional in this: that there is an unlawful discrimination against public corporations and in favor of private or *quasi*-public corporations. It is pointed out that property appropriated to the use of any territory mentioned in the sections may not be taken by any of the public corporations or agencies therein named, but that there is no prohibition against a private corporation doing so. Hence the alleged unlawful discrimination. The case of *City of Pasadena* v. *Stimson,* 91 Cal. 238 [27 Pac. 604], is cited in support of the contention. The point seems not to have been raised in the Mono Power Company case. At least an examination of the opinion shows that it was not passed upon. We deem it unnecessary to determine the question for the reason that, assuming the constitutionality of the prohibitory clauses, the petitioner has not been brought within such prohibition.

The petitioner in its opening brief anticipated certain contentions on the part of the respondent or of the East Bay Water Company, but inasmuch as those contentions have not been advanced by either the Commission or the water company they will not be discussed.

The peremptory writ is denied.

Myers, C. J., Lennon, J., Lawlor, J., Waste, J., Richards, J., and Seawell, J., concurred.