**GRASON ELECTRIC COMPANY, et al., Plaintiffs,**

**v.**

**SACRAMENTO MUNICIPAL UTILITY DISTRICT, Defendant.**

**No. Civ. S–79–861 RAR.**

United States District Court,
E. D. California.

Nov. 23, 1981.

As Amended Nov. 30, 1981.

G. Joseph Bertain, Jr., Robert A. Susk (argued), Leslie J. Mann, San Francisco, Cal., for plaintiffs.

Downey, Brand, Seymour & Rohwer, David S. Kaplan, Sacramento, Cal., Ronald E. Lipp, Cloverdale, Cal., for defendant.

## MEMORANDUM

RAMIREZ, District Judge.

Defendant's Motion for Judgment on the Pleadings and plaintiffs' Motion to Strike Defendant's Fifth and Eighth Defenses came on regularly for hearing before the Honorable Raul A. Ramirez on October 5, 1981. G. Joseph Bertain, Esq., Robert A. Susk, Esq., and Leslie J. Mann, Esq., appeared on behalf of the plaintiffs, GRASON ELECTRIC COMPANY, et al. John F. Downey, Esq., Edward R. Coulson, Esq., and Ronald F. Lipp, Esq., appeared on behalf of the defendant, SACRAMENTO MUNICIPAL UTILITY DISTRICT.

Having read and considered all memoranda filed herein, having heard and considered the able arguments of counsel, and being fully advised of all premises involved herein, the Court now renders the following Memorandum and Order:

### I

Defendant's Motion for Judgment on the Pleadings is predicated on the contention that it is entitled to immunity from liability for the conduct of which plaintiffs complain. In essence, defendant claims immunity on the grounds that its action is "state action," *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).

In regard to the issue of "state action," the Court finds that neither the defendant nor its Board of Directors is a state agency; both are political subdivisions of the state, *Pacific Gas & Electric Co. v. Sacramento Municipal Utility District*, 92 F.2d 365 (9th Cir. 1937); *East Bay Municipal Utility District v. Railroad Comm'n*, 194 Cal. 603, 229 P. 949 (1924). Additionally, the Court finds that the mere fact that the defendant is a creature of statute is irrelevant; more important are the facts that the defendant is not dependent upon the State Treasury for the funding of its activities and that the state does not designate or select the individuals who will make policy for the defendant. For these reasons, the Court concludes that the defendant is a political subdivision of the state, and not a state agency. *See also Environmental Defense Fund v. East Bay Municipal Utility District*, 20 Cal.3d 327, 350, 142 Cal.Rptr. 904, 572 P.2d 1128 (1977); *East Bay Municipal Utility District v. Appellate Department*, 23 Cal.3d 839, 153 Cal.Rptr. 597, 591 P.2d 1249 (1979).

The distinction, as drawn herein, is critical inasmuch as a plurality of the United States Supreme Court has decided that the state action immunity doctrine established by *Parker v. Brown, supra*, does not have the same scope in the case of a municipality as it does in the case of the state *qua* state:

> [Our prior] decisions require rejection of petitioners' proposal that their status as such automatically affords governmental entities the "state action" exemption.... *Parker*'s limitations of the exemption to "official action directed by a state," 317 U.S., at 351, 63 S.Ct., at 313, is consistent with the fact that the States' subdivisions generally have not been treated as equivalents of the States themselves. In light of the serious economic dislocation which could result if cities were free to place their own parochial interests above the Nation's economic goals reflected in the antitrust laws, ... we are especially unwilling to presume that Congress intended to exclude anticompetitive municipal action from their reach.

*City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389 at 411, 98 S.Ct. 1123 at 1136, 55 L.Ed.2d 364 (1978).

The United States Supreme Court held further that a political subdivision of the state may be entitled to claim immunity

from liability for allegedly anticompetitive conduct if the political subdivision acts pursuant to state policy to displace competition with regulation or monopoly public service. *City of Lafayette v. Louisiana Power & Light Co., supra, see also Community Builders, Inc. v. City of Phoenix*, 652 F.2d 823 (9th Cir. 1981).

The defendant herein, relying on certain words and phrases in *City of Lafayette*, argues that all it need show in order to avail itself of the state action immunity is that the state "authorized or directed" the activity of which the plaintiffs complain:

> [A] political subdivision [need not] necessarily ... be able to point to a specific, detailed legislative authorization before it properly may assert a *Parker* defense to an antitrust suit. While a subordinate governmental unit's claim to *Parker* immunity is not as readily established as the same claim by a state government sued as such, we agree with the Court of Appeals that an adequate state mandate for anticompetitive activities of cities and other subordinate governmental units exists when it is found "from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of."

*City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. at 415, 98 S.Ct. at 1138. While finding no fault with the general proposition as cited by the defendant, the Court cannot accept defendant's contention that the language above quoted means that *broad, general organic statutes* are sufficient to insulate a political subdivision of the state from liability for alleged anticompetitive action.

Since its decision in *City of Lafayette*, the United States Supreme Court has, on two occasions, addressed the standard for the application of the state action immunity doctrine, *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980), and *New Motor Vehicle Board v. Orrin W. Fox Co.*, 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978). On each of those occasions the Su-

preme Court reiterated the proposition that state action immunity may properly be invoked when the challenged activity is done pursuant to a "clearly articulated and affirmatively expressed state policy" to supplant competition with regulation or monopoly public service, and that · policy is "actively supervised" by the state itself. This Court must conclude that, to the extent that *Midcal Aluminum* and *New Motor Vehicle Board* did not simply reiterate *City of Lafayette*'s standard, those cases explicated the standard articulated in *City of Lafayette*. Therefore, the inquiry to be made by this Court is: Does the State of California have a clearly articulated and affirmatively expressed policy to supplant competition in the market for the installation of electrical distribution systems and installation of outdoor lighting systems with regulation or monopoly public service, which policy is actively supervised by the state?

In support of its contention that the State of California does have a clearly articulated and affirmatively expressed policy to supplant competition with monopoly public service, the defendant directs the Court's attention to (1) the regulatory milieu, and (2) the fate of certain bills introduced in the California Legislature.

### A

▮ Although the defendant has not cited any California statutes which explicitly address the issue of installation of electrical distribution systems, defendant does cite Cal. Public Utilities Code § 12801, which provides in relevant part:

> A [municipal utility] district *may* acquire, construct, own, operate, control, or use, ... works or parts of works for supplying the inhabitants of the district, ... or some of them ... with light ... and *may* do all things necessary and convenient to the full exercise of the powers herein granted....
> (Emphasis added)

This statute does not by its terms create a policy of preferring monopoly to competition; it is merely permissive. As the Supreme Court noted in *City of Lafayette*:

When cities, each of the same status under state law, are equally free to approach a policy decision in their own way, the anticompetitive restraints adopted as policy by any one of them, may express its own preference, rather than that of the State. Therefore, in absence of evidence that the State authorized or directed a given municipality to act as it did, the actions of a particular city can hardly be found to be pursuant to "the state['s] command," or to be restraints that "the state . . . as sovereign" imposed.

*City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. at 414, 98 S.Ct. at 1137. It appears from the terms of Cal.Pub.Util. Code § 12801 that each municipal utility district is permitted to make whatever policy decisions it chooses with respect to the construction of electrical distribution systems. As such, the state does not enjoy a sufficient degree of involvement in that decision-making process to insulate the district from the consequences of making an anti-competitive choice.

■ In addition to Cal.Pub.Util. Code § 12801, the defendant cites a host of other statutes for the proposition that the State of California has a clearly articulated and affirmatively expressed policy to replace competition with monopoly in the generation of electrical energy. Once again, while the Court finds no fault with defendant's general proposition, the Court is not persuaded that the state has a clearly articulated and affirmatively expressed policy to replace competition in "private property wiring" with monopoly. In this regard, it has already been determined that pervasive regulation of a utility generally is insufficient to insulate the utility from liability for any and all anti-competitive conduct:

There is no logical inconsistency between requiring such a firm to meet regulatory criteria insofar as it is exercising its natural monopoly powers *and also to comply with the antitrust standards to the extent that it engages in business activity in competitive areas of the economy.* (Emphasis added)

*Cantor v. Detroit Edison Co.,* 428 U.S. 579, 596, 96 S.Ct. 3110, 3120, 49 L.Ed.2d 1141 (1976). Therefore, the mere fact of pervasive regulation generally cannot demonstrate the requisite degree of state involvement in a particular course of conduct. The state policy of preferring monopoly to competition must apply to the very conduct of which the plaintiffs complain.

In conclusion, it cannot be said that any state policy in favor of monopoly in the installation of electrical distribution systems can be gleaned from those statutes that govern and control the defendant in the conduct of its affairs.

B

The defendant's second source for a state policy to replace competition with monopoly is the action or rather the inaction of the State Legislature over the past fifteen years. While it is true that no law explicitly providing for monopoly in the installation of electrical distribution systems has ever been enacted, it is equally true that the Legislature has never enacted any of the many bills introduced that would have required various political subdivisions of the state to increase the business they let to private electrical contracting companies. From these facts, the defendant argues that because the Legislature has had an opportunity to change the *status quo* and has never taken advantage of that opportunity, the *status quo* must be consistent with state policy.

■ In proffering this argument, the defendant overlooks the requirement that the state policy in favor of monopoly must be "clearly articulated and affirmatively expressed." While considerations of federalism may dictate that the Sherman Act be interpreted to permit the states to make decisions preferring monopoly to competition, *see, e. g., New Motor Vehicle Board v. Orrin W. Fox Co., supra,* the Sherman Act protects interests so vital to the republic, *United States v. Topco Assoc., Inc.,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), that such a decision on the part of a state will be honored only when the state clearly

and affirmatively announces same. A state policy preferring monopoly to competition cannot be demonstrated by inference. As my learned brother, Judge Solomon, observed in *Hahn v. Oregon Physicians' Service*, 508 F.Supp. 970, 976 (D.Ore.1981):

Immunity from the antitrust laws is available when the anticompetitive activity is "clearly articulated and affirmatively expressed as a state policy," and when that policy is actively supervised by the state itself.

Defendants contend that a "clearly articulated state policy" supporting their treatment of podiatrists exists because the Oregon Legislature has refused to pass equality legislation for podiatrists, but has passed such legislation for others in the health care fields.

The failure to enact proposed equality legislation is not alone enough to demonstrate a clear state policy favoring the inequality. As the Oregon Supreme Court stated ... "Legislative inaction is a weak reed upon which to lean in determining legislative intent."

To be entitled to state action immunity, the state's anticompetitive policy must be affirmative, not passive or inferential. Defendants have not demonstrated a clearly articulated state policy supporting their treatment of podiatrists.

Similarly, the defendant's argument here must fail. The death of a bill, even numerous bills, in committee cannot demonstrate a clearly articulated and affirmatively expressed state policy replacing competition with monopoly public service.

Accordingly, this Court must conclude that the State of California has no clearly articulated and affirmatively expressed state policy favoring monopoly in the installation of electrical distribution systems. Additionally, the Court concludes that the State of California does not actively supervise such a policy. Although the defendant argues that such active supervision is provided by its own Board of Directors, the defendant's Board of Directors is not a state agency, but a political subdivision of the state. Therefore, supervision of the defendant by its own Board of Directors cannot constitute supervision by the state.

As an alternative argument, defendant contends that the California Legislature itself actively supervises the defendant, and thus actively supervises this allegedly anticompetitive conduct. The defendant's argument may be summarized as follows: The Legislature has reserved to itself the authority to direct the defendant's conduct in every sphere; the Legislature has often exercised its powers and involved itself in the most minute aspects of the defendant's affairs; therefore, it follows that the Legislature is actively supervising *all* of the defendant's conduct, including the conduct of which the plaintiffs complain.

This argument is wholly unpersuasive. It appears that the Legislature exercises no greater supervision over the defendant than it does over any business entity subject to regulation by the state. The scope of the Legislature's power to legislate with respect to the defendant's affairs is virtually without limit, but the mere existence of that power and the occasional willingness to exercise the power in other matters does not constitute active supervision of the alleged anticompetitive conduct challenged herein.

Accordingly, defendant's Motion for Judgment on the Pleadings in regard to its Fifth Affirmative Defense must be, and hereby is, Denied.

Notwithstanding the above, the Court is of the opinion that the availability of the state action immunity constitutes a controlling question of law as to which there may be some ground for a difference of opinion, and an immediate appeal from the Order Denying the Motion for Judgment on the Pleadings may materially advance the ultimate termination of the litigation, 28 U.S.C. § 1292(b). Therefore, the Court hereby grants the defendant leave to seek the permission of the Circuit Court of Appeals for the Ninth Circuit to take an interlocutory appeal, Federal Rule of Appellate Procedure 5.

As a side note, plaintiffs properly noticed a counter-motion pursuant to Local Rule 113(h), moving the Court to grant summary

judgment on their contention that the defendant was not entitled to claim state action immunity for its conduct. In the alternative, the plaintiffs requested the Court to strike the defendant's affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). The Court is of the opinion that a Motion to Strike pursuant to F.R.Civ.P. 12(f) is entirely appropriate; when the affirmative defense is purely a question of law, an early adjudication of that question of law will expedite the litigation and facilitate the administration of justice, *Simpson v. Alaska State Comm'n for Human Rights*, 423 F.Supp. 552 (D. Alaska, 1976), *aff'd*, 608 F.2d 1171 (9th Cir. 1979).

The Court is also of the opinion that the application of the state action immunity doctrine to the activities of the defendant presents a pure question of law. While it is true that the proper resolution of that pure question of law requires reference to secondary materials, those secondary materials consist entirely of legislative facts and facts of which the Court can take judicial notice. Accordingly, there is no legal reason why a grant of the Plaintiffs' Motion to Strike the Fifth Affirmative Defense is not proper at the present time.

It is apparent to the Court, however, that the defendant did not either notice or appreciate the plaintiffs' counter-motion and thus failed to respond to that motion. At oral argument and subsequently, the defendant repeatedly asserted that, given an opportunity, it could prove certain adjudicative facts that would demonstrate its entitlement to state action immunity. Because the Court's first interest is in having disputes resolved on their merits, and because no significant prejudice to the plaintiffs would result from a brief delay, the Court will, and hereby does, withdraw its previous ruling from the bench granting the Plaintiffs' Motion to Strike. The Plaintiffs' Motion for Summary Judgment or, in the alternative, to Strike the Fifth Affirmative Defense will be continued to March 1, 1982, at 9:00 a. m.

## II

The Defendant's Motion for Judgment on the Pleadings embraced not only its Fifth Affirmative Defense, but also its Eighth Affirmative Defense. By its Eighth Affirmative Defense, the defendant contends that regardless of whatever culpability may ultimately be shown, it ought not be required to pay to the plaintiffs any money damages whatsoever. In this regard, the defendant points out that it is a publicly-owned entity; that it is not in business to make money, but purely and simply to provide a public service; that any and all damages assessed against it must necessarily be borne by the rate-payers, the public.

■ With respect to the defendant's contention that it ought not be required to pay actual damages, such a contention must be rejected. Entities whose revenues are derived from the public fisc are often required to respond in damages, *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The day is long past when it was thought that mere status as a public entity was a sufficient basis upon which to require a tort victim to bear his own damages, *see Muskopf v. Corning Hospital District*, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457 (1961).

■ With respect to the defendant's contention that it ought not to be required to pay treble damages, such a contention must likewise be rejected as beyond the powers of this Court. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides in relevant part as follows:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor .... without respect to the amount in controversy, and *shall* recover threefold the damages by him sustained.... (Emphasis added)

The defendant's request to limit the plaintiffs to injunctive relief amounts to nothing less than a request to amend Section 4 of the Clayton Act. In essence, the defendant invites the Court to read "shall" as "may." This invitation the Court must decline.

The defendant's argument in this regard is not based on the legislative history of the Clayton Act nor on any plausible reading on Section 4. Rather, the defendant's argument is based entirely on public policy. While the defendant's public policy arguments have some merit, such arguments should be addressed to Congress and not to this Court. The Court is bound by the mandatory language of Section 4, and by the fact that Section 4 is framed in terms of the injured party rather than in terms of the injuring party.

The Court is fully aware of the recent decision in *City of Newport v. Fact Concerts, Inc.*, —— U.S. ——, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Although the discussion in *City of Newport* clearly has relevance to the contention urged by the defendant herein, it is not controlling. In *City of Newport*, the United States Supreme Court noted that Congress, in enacting 42 U.S.C. § 1983, intended to codify certain aspects of the common law as it then existed. A thorough and scholarly review of the common law established beyond peradventure that punitive damages were not recoverable from a municipality at common law. Accordingly, 42 U.S.C. § 1983 could not be read as authorizing punitive damages against a municipality.

No such room for maneuver exists with respect to the Clayton Act. Section 4 explicitly mandates the award of treble damages without respect to the status or identity of the wrongdoer. This Court is without the power to rewrite Section 4 of the Clayton Act.

Accordingly, Defendant's Motion for Judgment on the Pleadings in regard to its Eighth Affirmative Defense must likewise be Denied.

As noted above, the plaintiffs filed counter-motions with respect to each of the issues raised by the Defendant's Motion for Judgment on the Pleadings. The plaintiffs again take the position that the Defendant's Eighth Affirmative Defense presents a pure question of law, and as a pure question of law the Eighth Affirmative Defense is without merit and should be stricken.

The Court agrees with the plaintiffs, and understands that the defendant does not dispute the assertion that its Eighth Affirmative Defense presents a pure question of law.

Because the Eighth Affirmative Defense raises a pure question of law, and because as a matter of law the Eighth Affirmative Defense is without merit, the Plaintiff's Motion to Strike the Eighth Affirmative Defense is Granted.

IT IS SO ORDERED.