[Civ. No. 36144. First Dist., Div. Two. June 22, 1976.]

EDWIN M. McMILLAN et al., Plaintiffs and Respondents, v.
AMERICAN GENERAL FINANCE CORPORATION et al.,
Defendants and Appellants.

**COUNSEL**

Watson & Hoffe, Francis A. Watson, Jr., and Douglas E. Swager for Defendants and Appellants.

Richard H. Bartke for Plaintiffs and Respondents.

Evelle J. Younger, Attorney General, E. Clement Shute, Jr., Assistant Attorney General, and Marc B. Mihaly, Deputy Attorney General, as Amici Curiae for Plaintiffs and Respondents.

**OPINION**

**KANE, J.**—This is an appeal from a superior court judgment which set aside approval of the appellants' tentative map by the Richmond City Council and which enjoined any development on the site in question. Under established principles, judicial review in such cases is limited to determining whether substantial evidence supports the findings of the city council and whether the findings support the council's determinations (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506 [113 Cal.Rptr. 836, 522 P.2d 12]). For the reasons stated below we have concluded that both of these requisites were fulfilled by the city council. Therefore, the judgment of the trial court must be reversed.

### Statement of Facts

Appellants desire to build a 70-unit condominium complex on a 22.5-acre site which was formerly owned by their predecessor in interest,

Trowbridge Properties, Inc. (hereafter "Trowbridge"). The two short sides of the roughly rectangular parcel abut large single-family residential lots and property owned by the East Bay Municipal Utility District; the northeast edge is contiguous to East Bay Regional Park land and the southwest edge is the border between Richmond and the City of El Cerrito, and also serves as the boundary for the Mira Vista Country Club.

In 1961, the site was rezoned for high-rise residential controlled development. This action was apparently taken pursuant to an agreement whereby Trowbridge gave the City of Richmond approximately 300 acres for parks and other public purposes in exchange for rezoning the site in question for 400 residences. The city's general plan subsequently included the site in its residential designation.

In 1967, Richmond's general plan was revised when the city council adopted recommended revisions which included designating Wildcat Canyon, the area where appellants' property is located, a general park lands area. The planning commission was directed to disseminate information about the revised general plan. Pursuant to this directive, the planning commission prepared and circulated a brochure containing a map which designated appellants' property for "Expansion of Parklands in Wildcat Canyon." However, the descriptive part of the brochure limited park expansion to property then "under negotiation for purchase by the East Bay Regional Park District." Whether the proposed development site was then "under negotiation" or even consciously included in the park lands designation will be discussed below. Also inadvertently covered by this designation were two areas for which subdivision maps had already been approved and several occupied houses.

In 1968, the City of Richmond recorded a "Declaration of Controlled Development Zoning" which included the development site as property subject to a controlled development plan approved by the city planning commission.

In 1969, Trowbridge agreed—as a condition of rezoning other property—to reduce the number of units on the development site from 400 to 100.

In 1972, Trowbridge agreed to a further reduction in the number of units on the site to 70.

After appellants had acquired Trowbridge's interest in the site, the city ordered preparation of an environmental impact report ("EIR") which was submitted to the city together with appellants' tentative map. These documents were initially reviewed by the planning commission's development review committee. The committee prepared a detailed analysis which considered, inter alia, whether the proposed development was consistent with the Richmond general plan, and whether its approval would require any affirmative findings under then applicable Business and Professions Code section 11549.5, subdivisions (a) or (b).[1] The committee concluded that the development was consistent with the general plan and that no affirmative findings were necessary. Approval of the tentative map, subject to several conditions, and of the EIR was recommended.

The planning commission approved the EIR, but for reasons apparently not related to the question of conformity with the Richmond general plan denied approval of the tentative map on a split vote. Pursuant to a city ordinance, this denial was appealed to the city council. The planning director sent the council a memorandum on appeal procedures. This memo reminded the council that if they decided to approve the development, certain findings were required by statute, and made reference to relevant parts of the development review committee report.

On August 6, 1973, the city council approved the EIR and initiated a public hearing on the appeal. After considerable discussion, the hearing was put over for two weeks to give council members time to carefully consider all facets of the appeal. At its August 20, 1973, meeting there was additional open discussion regarding the proposed development, following which the counsel voted to overrule the planning commission.[2]

[1]Section 11549.5 was repealed and replaced by Government Code, section 66474, in 1974. This new section, which is substantially the same as the one it supersedes, reads in relevant part: "A legislative body of a city or county shall deny approval of a final or tentative subdivision map if it makes any of the following findings:

"(a) That the proposed map is not consistent with applicable general and specific plans.

"(b) That the design or improvement of the proposed subdivision is not consistent with applicable general and specific plans."

[2]Our review of council meeting transcripts indicates that two opponents of the development questioned its conformity with the general plan at the first meeting. No specific objections on this ground were raised at the second meeting. These objections were countered by appellants' counsel, who referred the council to an opinion of the city attorney. This opinion expressed the view that the site was not within the park-land designation because it had never been under negotiation for purchase by the park district and because the city had made representations to developers that a project could proceed

Prior to the actual vote, a great deal of discussion took place between various members of the council and the city attorney, from which it is clear that the intended import of the motion to overrule the planning commission included approval of the tentative map with certain described conditions together with a determination that the council had made the negative findings required by the Business and Professions Code. Any doubt concerning the scope of the resolution adopted by the council at that time is removed by the actions which immediately followed. The minutes of the meeting indicate that immediately after adoption of the resolution, the council took a recess, during which a discussion took place concerning the adequacy of the negative findings or reference thereto contained in the resolution. Upon reconvening, Councilman Fernandez made the following motion: "I would move, Mr. Mayor, that as outlined on pages 4 through 7 of the [development and review committee] report in front of us, that we make the negative findings outlined in Section 11549.5 of the California Business and Professions Code relative to this project." The motion was seconded and *unanimously* approved. The council then voted six to two to approve the tentative map subject to several conditions. The city attorney then drafted and the mayor approved a formally worded resolution[3] which reads in relevant part, "Now, THEREFORE, BE IT RESOLVED by the Council of the City of Richmond, California, that:

"1. The Council finds that none of the provisions contained in Section 11549.5 of the Business and Professions Code of the State of California will be violated by the development of this subdivision.

"2. The Council finds that in relation to Section 11526(b) [4] [*sic*] of the Business and Professions Code that the proposed subdivision, together with the provisions for its design and improvement, are consistent with the applicable and specified general plans of the City of Richmond."

Shortly after this approval, numerous permits were issued and work on the development began.

without amendment to the general plan. Also before the council was the committee report which contained substantial discussion and analysis of competing factors on the consistency issue. The committee concluded that the development would conform with the general plan. The council members in attendance, three of whom had been members when the 1967 amendment was adopted, unanimously agreed with the committee.

[3]See footnote 8, *infra*, for a discussion of the propriety of this procedure.

[4]The parties stipulated that this finding was in fact made pursuant to section 11526, subdivision (c). Section 11526 was repealed in 1974 and replaced by a substantially identical statute, Government Code, section 66473.5.

On October 5, 1973, the respondents filed this action against the City of Richmond, certain named representatives thereof, the County of Contra Costa and the appellants. The complaint attacked approval of the proposed development on numerous grounds.[5] After granting judgment on the pleadings in favor of the County of Contra Costa, the matter was heard without a jury in January and February of 1974. Following 11 days of trial, the court below found for the defendants and appellants on all issues, except that it found that: (1) the city council findings that sections 11526, subdivision (c), and 11549.5, subdivisions (a) and (b), of the Business and Professions Code will not be violated are not supported by substantial evidence; (2) Richmond's general plan specifically included the site in a park lands designation; (3) Richmond zoning ordinances do not constitute a · specific plan within the meaning of Business and Professions Code, sections 11526, subdivision (c), and 11549.5, subdivisions (a) and (b), and section 65451 of the Government Code.

Conclusions of law were rendered in conformity with the findings, and judgment was entered permanently restraining development of the site.

On appeal the developer-appellants seek reversal, urging that (1) the Richmond zoning ordinance is a specific plan within the meaning of the statutes and that since the proposed development is consistent with that specific plan, the council's approval was proper; and (2) the specific findings of the council are legally sufficient and are supported by substantial evidence. Since we hold the latter claim to be meritorious, the question of whether the zoning ordinances constitute a specific plan need not be considered.

### Judicial Review

In this case we review that part of the Richmond City Council's action which concerns findings made pursuant to Government Code, sections 66473.5 and 66474.[6] The function of an appellate

---

[5]The pretrial order limited the issues to allegations that (1) the EIR was inadequate according to the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.); (2) the council's approval of the tentative map was arbitrary, capricious, an abuse of discretion and contrary to applicable law; (3) issuance of building permits was contrary to applicable procedures and ordinances; (4) a cause of action had been stated against Contra Costa County; and (5) adequate provision of access to the development had not been made.

[6]See footnotes 1 and 4 for the statutes which were in force when the council took its action. Under the reasoning of *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 125 [109 Cal.Rptr. 799, 514 P.2d 111], this court must apply currently existing law to insure consistency with existing legislative intent.

court in cases like this is to determine whether (1) the findings of the agency or local governmental body (hereafter "agency") are legally sufficient, and (2) whether the findings are supported by substantial evidence and support the agency's decision (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 510). In making these determinations this court must resolve any reasonable doubts in favor of the agency findings and decision (*Id.,* at p. 514; *Savelli* v. *Board of Medical Examiners* (1964) 229 Cal.App.2d 124, 132 [40 Cal.Rptr. 171]). Furthermore, in cases of this nature, courts may not substitute their own judgment for that of the agency (*City of Fairfield* v. *Superior Court* (1975) 14 Cal.3d 768, 778-779 [122 Cal.Rptr. 543, 537 P.2d 375]; *Running Fence Corp.* v. *Superior Court* (1975) 51 Cal.App.3d 400, 423 [124 Cal.Rptr. 339]). Thus, it is axiomatic that our inquiry (as was the trial court's) is limited by the substantial evidence rule to the record made before the city council (*Keithley* v. *Civil Service Bd.* (1970) 11 Cal.App.3d 443, 449 [89 Cal.Rptr. 809]; *Savelli* v. *Board of Medical Examiners, supra,* at pp. 132-133; see *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* at p. 510, fn. 3).[7]

### Sufficiency of the City Council's Findings

■ As the leading case on judicial review of administrative findings in California, *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* is controlling.

Although *Topanga* dealt with review of a zoning variance via mandamus, it articulates rules of general applicability to all types of review of quasi-judicial administrative actions. It is one of many recent cases in which administrative bodies have been taken to task for failing to make findings of fact which sufficiently support their actions or decisions (e.g., *Burger* v. *County of Mendocino* (1975) 45 Cal.App.3d 322, 326 [119 Cal.Rptr. 568]; *Woodland Hills Residents Assn., Inc.* v. *City Council* (1975) 44 Cal.App.3d 825, 833 [118 Cal.Rptr. 856]; *Society for Pro. of N.H. Forests* v. *Site Eval. Com.* (1975) 115 N.H. 163 [337 A.2d 778, 786-787]). *Topanga* holds that an agency "must render findings sufficient both to enable the parties to determine whether and on what

---

[7]Unless fundamental vested rights are involved (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29]), courts do not hear matters like the one before us de novo (*Running Fence Corp.* v. *Superior Court, supra; Hadley* v. City of Ontario (1974) 43 Cal.App.3d 121, 127 [117 Cal.Rptr. 513]; see *City & County of S.F.* v. *Superior Court* (1959) 53 Cal.2d 236, 244 [1 Cal.Rptr. 158, 347 P.2d 294]). Thus, courts may not substitute their own judgment for that of the agency (*City of Fairfield, supra; Running Fence Corp., supra*).

basis they should seek review ánd, in the event of review, to appraise a reviewing court of the basis for the . . . [agency's] action. We hold further that a reviewing court . . . must scrutinize the record and determine whether substantial evidence supports the administrative agency's findings and whether these findings support the agency's decision." (*Id.,* at p. 514.) These findings must "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Id.,* at p. 515.)

In the proceeding below, respondents did not attack the sufficiency of the council's findings per se.[8] However, we feel that *Topanga* compels us to consider the substantive sufficiency of administrative findings in this case.

*Topanga* reiterates the long established rule in California that administrative findings need not be as precise or formal as would be required of a court (11 Cal.3d at p. 517, fn. 16). Indeed, the Supreme Court there considered a planning commission's summary of "factual data" to be agency findings (*id.,* p. 518). Numerous other cases have considered the question of what constitutes sufficient administrative findings. In *Swars v. Council of City of Vallejo* (1949) 33 Cal.2d 867 [206 P.2d 355], cited with approval in *Topanga* (at pp. 516, 517), it was held that in making findings an administrative agency may incorporate by reference the language of the pleadings (33 Cal.2d at p. 872), noting that the practice of incorporation by reference is accepted in judicial findings. This general doctrine has never been questioned with regard to administrative findings (see Gov. Code, § 11518). Thus, reference to portions of a report in administrative findings incorporates that part of said report in the findings (*Stoddard* v. *Edelman* (1970) 4 Cal.App.3d 544, 549, fn. 3 [84 Cal.Rptr. 443]; see *Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 518). Furthermore, the language of a

---

[8]See footnote 5. However, the respondents argued below and on appeal that it was improper for the council to make findings prior to having the city attorney draft a complete formal resolution. The trial court did not make a finding on this collateral issue, apparently assuming the regularity of this procedure. ·

Given people's propensity for arriving at identical conclusions for diverse reasons, their inability to foresee all possible contingencies prior to a meeting, and their unceasing ability to quibble over the semantics of substantially identical phrases in spite of time limitations, this procedure would generally seem reasonable (see *Zakessian* v. *City of Sausalito* (1972) 28 Cal.App.3d 794, 803 [105 Cal.Rptr. 105]), if not necessary. The facts show that the council was both aware of the need to make findings and possessed comprehensive staff analysis on the very findings which are here questioned. This analysis was referred to by Councilman Fernandez and the formal resolution was approved by Mayor Anderson, one of the two who voted against approving the project. Under such facts, to require tighter procedures would be to elevate form over substance.

motion which is subsequently adopted may constitute administrative findings (*Hamilton* v. *Board of Supervisors* (1969) 269 Cal.App.2d 64, 68 [75 Cal.Rptr. 106], cited with approval in *Topanga,* at p. 513). Other examples of the judiciary's willingness to focus on the substance rather than the form of administrative actions are legion.[9] "As a practical matter, omissions in [administrative] findings may sometimes be filled by such relevant references as are available." (*County of Amador* v. *State Board of Equalization* (1966) 240 Cal.App.2d 205, 219 [49 Cal.Rptr. 448]). Thus, where reference to the administrative record informs the parties and reviewing courts of the theory upon which an agency has arrived at its ultimate finding and decision it has long been recognized that the decision should be upheld if the agency "in truth found those facts which as a matter of law are essential to sustain its . . . [decision]." (*Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953) 40 Cal.2d 102, 124 [251 P.2d 955]; *Cal. Shipbuilding Corp.* v. *Ind. Acc. Com.* (1947) 31 Cal.2d 270, 271 [188 P.2d 27]; see 2 Cal.Jur.3d, Administrative Law, § 277, p. 530.)[10]

■ In the present case the motion which produced the findings now under attack contained a specific reference to the staff report which considered the conflicting factors relevant to determining whether the proposed project was consistent with Richmond's general plan. Under the authorities cited above, this reference alone sufficed to incorporate that part of the report in the formal findings of the council (*Stoddard* v. *Edelman, supra; Hamilton* v. *Board of Supervisors, supra; County of Amador* v. *State Board of Equalization, supra*). This report, in turn, recommended the very findings which the council made. It would be redundant and counterproductive, indeed, to require the council to go over such staff reports and recommendations in detail at their meetings.[11] As pointed out earlier, the council had at least two weeks in which

[9](E.g., *Webster* v. *Board of Dental Examiners* (1941) 17 Cal.2d 534, 543 [110 P.2d 992]; *Realty Projects, Inc.* v. *Smith* (1973) 32 Cal.App.3d 204, 213 [108 Cal.Rptr. 71]; see 7 U.C.L.A.L.Rev. 436; see also Gov. Code, § 11518.)

[10]Some courts have stated or implied that construction of administrative findings should be most liberal where the agency or local governing body is comprised largely of laymen and least liberal when reviewing actions of expert administrative agencies (cf. *Bailey* v. *County of Los Angeles* (1956) 46 Cal.2d 132, 136 [293 P.2d 449]; *Cantrell* v. *Board of Supervisors* (1948) 87 Cal.App.2d 471, 479 [197 P.2d 218]; *Dubiel* v. *Zoning Board of Appeals of East Hartford* (1960) 147 Conn. 517 [162 A.2d 711, 714], *with Yonkers* v. *United States* (1944) 320 U.S. 685, 691-692 [88 L.Ed. 400, 404-405, 64 S.Ct. 327]; *Application of Terminal Transportation, Inc.* (1972) 54 Hawaii 134 [504 P.2d 1214]; *Continental Oil Co.* v. *Oil Conservation Com'n* (1962) 70 N.M. 310 [373 P.2d 809, 816]).

[11]See paragraph 2 of footnote 8. Since the council actions here in question took place nine months prior to *Topanga,* it is questionable whether the guidelines there laid down could fairly be applied to this proceeding if they required a result different from that

to consider the report in conjunction with arguments made at the first meeting. Those who opposed the development from the time it was submitted to the planning commission had considerably more time to prepare arguments on the issue of consistency. Yet no specific complaint on this issue was heard at the second and final open discussion although the meeting transcript indicates that two named plaintiffs spoke at that meeting. No injustice is worked by our conclusion.[12] The respondents' arguments at trial and on appeal clearly show that they were aware of the factors which caused the council to find the development consistent with the general plan.[13]

Administrative findings are substantively sufficient under the foregoing authorities if they (1) inform the parties of the bases on which to seek review (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles, supra,* 11 Cal.3d at p. 514), and (2) permit the courts to determine whether the decision is based on lawful principles (*Id.,* at p. 516; *Doyle* v. *Board of Barber Examiners* (1966) 244 Cal.App.2d 521, 525 [53 Cal.Rptr. 420]). By incorporating the staff report the council's findings fulfilled both requisites. In addition to analyzing competing factors on the conformity question, the report reflected a strong desire to proceed in a lawful manner. The administrative record is replete with evidence that both the city and the developers acted with utmost good faith and made their decisions based on lawful principles. As interpreted by this court, the findings of the city council complied with the requirements of

which we reach today. However, as stated at the outset of this opinion, we regard *Topanga* to be controlling with regard to adequacy of findings in quasi-judicial administrative proceedings.

[12]Although we do not rely on them, many cases have stated that there is a need to show prejudice before administrative adjudicatory decisions will be reversed (e.g., *English* v. *City of Long Beach* (1950) 35 Cal.2d 155, 159-160 [217 P.2d 22, 18 A.L.R.2d 547]; *Swars* v. *Council of City of Vallejo* (1949) 33 Cal.2d 867, 872 [206 P.2d 355]). At least one case has suggested that the policy behind requiring a miscarriage of justice before judicial decisions are set aside (Cal. Const., art. VI, § 13) should be applied when reviewing such administrative decisions (*So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 176 [223 P.2d 1]). These cases are not inconsistent with the rule that administrative findings need not be as formal as judicial findings since both rules are intended to insure that a just administrative determination will not be set aside due to unnecessarily technical requirements as to form or procedure. As has been stated with reference to judicial findings, "It is not the main purpose of findings to afford means whereby a losing party may set aside a just judgment." (*Kenfield* v. *Weir* (1936) 16 Cal.App.2d 501, 503 [60 P.2d 885].)

[13]The proper method for attacking administrative findings is to petition for a rehearing or for additional or clearer findings (*Idaho Underground Wat. US. Ass'n.* v. *Idaho Power Co.* (1965) 89 Idaho 147 [404 P.2d 859, 863]; *Meinhardt Cartage Co.* v. *Illinois Commerce Com'n.* (1959) 15 Ill.2d 546 [155 N.E.2d 631, 634]). If this procedure is unavailable, correction of a defect in findings may be achieved by a writ of mandate (*Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 102 [280 P.2d 1]).

*Topanga.* The remaining question, therefore, is whether the findings and the decision were supported by substantial evidence before the council.

### Substantial Evidence

■ The court below found no substantial evidence supporting the Richmond City Council's determination that the proposed project conformed with the city's general plan. It is well settled that such a finding is not binding on this court, especially where the trial court improperly considered evidence which had not been before the council (*City of Fairfield* v. *Superior Court, supra,* 14 Cal.3d at pp. 778-779; *So. Cal. Jockey Club* v. *Cal. etc. Racing Bd.* (1950) 36 Cal.2d 167, 175 [223 P.2d 1]; *Kahn* v. *East Bay Mun. Util. Dist.* (1974) 41 Cal.App.3d 397, 402 [116 Cal.Rptr. 333]; *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 24 [112 Cal.Rptr. 872]). It is for the agency to weigh the preponderance of conflicting evidence (*Pac. Emp. Ins. Co.* v. *Ind. Acc. Com.* (1942) 19 Cal.2d 622 [122 P.2d 570, 141 A.L.R. 798]). Courts may reverse an agency's decision only if, *based on the evidence before the agency,* a reasonable person could not reach the conclusion reached by the agency.

As already noted, the primary evidence indicating lack of conformity with the general plan was the brochure prepared incident to the 1967 general plan amendments. Several people also stated that it was their understanding that the site had been designated for park lands expansion. Countering this evidence was, inter alia, (1) the report of the development review committee; (2) the opinion of the city attorney; (3) applicable zoning ordinances; (4) the post-1967 negotiations with developers which resulted in downzoning the site; and (5) the recorded "Declaration of Controlled Development Zoning," of which the council was presumptively aware. When considered as a whole, this evidence showed that after 1967 the city consistently continued to treat the property as being a proper site for development and that the property had not been under negotiation for purchase by the park district when the brochure was published. Since by its terms the brochure limited park lands expansion to lands then under negotiation, the council's finding of conformity was proper and was supported by the evidence. The evidence also clearly would have supported a finding that the brochure's map inadvertently indicated that the site and other populated areas were within the park lands designation. While it is arguable that this finding was incorporated by reference in the committee report, such a finding was not necessary to support the council's decision.

The foregoing leads us to the conclusion that the findings and decision of the Richmond City Council regarding conformity of the proposed development were supported by substantial evidence.

The judgment of the trial court is reversed.

Taylor, P. J., and Rouse, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 18, 1976.