[S.F. No. 23675. Mar. 27, 1979.]

EAST BAY MUNICIPAL UTILITY DISTRICT,
Petitioner, v.
THE APPELLATE DEPARTMENT OF THE SUPERIOR COURT OF
ALAMEDA COUNTY, Respondent;
ROBERT KAHN et al., Real Parties in Interest.

■■■■■■■■■■

**COUNSEL**

John B. Reilley and Robert C. Helwick for Petitioner.

James P. Botz, County Counsel (Sonoma), Mark Freed, Deputy County Counsel, John H. Larson, County Counsel (Los Angeles), Edward G. Pozorski, Deputy County Counsel, Richard J. Moore, County Counsel (Alameda), John Cosier and Richard Karlsson, Deputy County Counsel, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Glen L. Moss and Moss & Murphy for Real Parties in Interest.

**OPINION**

**CLARK, J.**—Petitioner East Bay Municipal Utility District (EBMUD) seeks review of an order by respondent Appellate Department of Alameda County Superior Court reversing municipal court judgment in favor of EBMUD against real parties in interest. We conclude respondent court erred and we set aside its order of reversal.

Real parties in interest in the underlying municipal court action were candidates for EBMUD's board of directors in the 1974 general election. Each asked that his statement of qualifications for office be included in the voter pamphlet distributed to the electorate prior to election. (See former Elec. Code, § 10012.5, now § 10012 (Stats. 1975, ch. 1158, § 19, p. 2854).) After the election EBMUD billed each candidate a pro rata share of expense for the pamphlet.[1] Real parties refused to pay and EBMUD commenced the underlying action.[2] Judgment was rendered for EBMUD in the amounts charged plus interest.

---

[1] The pro rata charge was $650 for each statement plus $650 for each language translation of the statement. The amount charged is not in issue.

Former section 10012.5 provided in pertinent part: "The local agency [EBMUD] may bill each candidate availing himself of these services a sum not greater than the actual prorated costs of printing, handling, and translating, if any, incurred by the agency as a result of providing this service. Only those charges may be levied with respect to the candidate's statement and each candidate using those services shall be charged the same."

[2] This is not a case in which real parties seek to avoid payment of lawful obligations on grounds of indigency or other inability to pay. None of real parties in interest—defendants in the underlying action—claims they are without the financial means to pay their pro rata share of proper costs.

■■■■■

Appeal by defendants to respondent court resulted in reversal of judgment on the ground that enforced collection is constitutionally prohibited. However, respondent court certified that transfer of the cause to the Court of Appeal appeared necessary to secure uniformity of decision on a matter of statewide concern. (See Code Civ. Proc., § 911; Cal. Rules of Court, rule 63(a).) The Court of Appeal rejected certification and EBMUD commenced the instant proceedings.[3]

We must determine the applicability of *Knoll* v. *Davidson, supra,* 12 Cal.3d 335, to the issue before us. In *Knoll* the court dealt with Elections Code section 10012.5 (now § 10012). The statute was challenged on the ground it invidiously discriminated against poor candidates, denying equal protection. This court recognized that candidates whose statements of qualifications were included in the voter pamphlet possessed an advantage over candidates unable to prepay printing costs. The court concluded the governmental agency may not constitutionally require prepayment of costs as a condition to printing statements of qualifications. The court held the condition constituted an invidious discrimination favoring wealthy people. But the court recognized the agency's interest in securing payment for services rendered, concluding the statute *"permits* the local agency to bill, at its option, each candidate, who has had a statement of qualifications included in the pamphlet, for his pro rata share of the actual costs of printing and handling, after the voter's pamphlet has been printed and distributed." (*Id.,* at p. 353.) The court also stated "that although prepayment of the prorated cost . . . may not be constitutionally required, the statute in question constitutionally permits the candidate to be billed for such cost after the voter's pamphlet has been printed and distributed." (*Id.,* at p. 338.)

Real parties contend that language in *Knoll* relative to the power of a local agency to bill for pamphlet costs *after* publication and distribution is only dicta and is inconsistent with *Knoll's* prepayment prohibition. However, *Knoll* concerned the inequality resulting when

---

[3]A writ of review issued and the parties are now before us in a certiorari proceeding. (See Code Civ. Proc., §§ 1067, 1071.) For reasons appearing, we deem that respondent court has acted in excess of jurisdiction within the meaning of *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455, 462 [20 Cal.Rptr. 321, 369 P.2d 937] (see also 5 Witkin, Cal. Procedure (2d ed. 1971) § 10, p. 3787) by its failure to comply with directions contained in Elections Code section 10012.1 and *Knoll* v. *Davidson* (1974) 12 Cal.3d 335 [116 Cal.Rptr. 97, 525 P.2d 1273]. The question is whether the appellate "judgment" of respondent court is to be affirmed or annulled.

only those candidates able to prepay costs present their qualifications to the voters through the official voter pamphlet. Inequality is eliminated when all candidates are permitted to make a statement of qualifications without prepayment. Equal protection does not further require that candidates be relieved of their pro rata costs of publication any more than they are entitled to relief from other personal costs of candidacy. Certainly there is nothing in either *Knoll* or in other equal protection concepts requiring reconsideration of our holding that a local agency may bill a candidate, after distribution of the voter pamphlet, for pro rata sharing of publication and distribution costs. We view the challenged language in *Knoll* not as dicta but as defining the limits of our holding, and we reaffirm that holding.

It is further contended that while the statute provides a local agency may bill a candidate his pro rata costs, it may not enforce collection by legal action. Such interpretation of the statute would effectively repeal it, as collections could be made only from those candidates who voluntarily pay their publication costs—an election they can make with or without the statute. A statute, of course, must be construed toward giving it meaning and effect. (See *Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112 [65 Cal.Rptr. 315, 436 P.2d 315]; Code Civ. Proc., §§ 1858, 1859.) While not addressing the issue directly in *Knoll,* this court held that the statute, served a useful function. "[W]e do not deem it necessary to strike down section 10012.5, because, as we read the statute, it . . . permits the county to subsequently bill the actual cost of providing the services once the services contemplated by the statute have been provided." (*Knoll* v. *Davidson, supra,* 12 Cal.3d 335, 352.)

While the statute expressly confers a power only to "bill" at the discretion of the local agency, we deem the Legislature to have intended that power to include collection through access to the courts.[4] We endorsed such a construction of the statute in *Knoll:* "It appears clear that *the county need not be compelled to pay the cost of providing this service* of printing and mailing candidates' statements of qualifications and that, as indicated in [*Bullock* v. *Carter* (1972) 405 U.S. 134 (31 L.Ed.2d 92, 92 S.Ct. 849)], the county has a legitimate state interest in *collecting* the actual cost of providing such a service." (*Knoll* v. *Davidson, supra,* 12 Cal.3d 335, 351; italics added.)

---

[4]In addition to billing, the statute speaks of "charges" which may be "levied," thus inferring the creation of a legal obligation rather than merely a sterile "right" to bill. (Fn. 1, *ante.*)

■ Real parties also claim that aside from statutory considerations, constitutional prohibitions preclude collection of prorated charges for the voter pamphlet. While acknowledging that the "government has no obligation to finance the campaign expenses of individual candidates," they claim the cost of the pamphlet statement is not a campaign expense but instead part of the cost of a "free election" which the state is constitutionally obligated to provide.[5] According to real parties the right to a "free election" does not distinguish between elector and candidate expense and the issue is "whether the particular candidate's statement under consideration should be viewed as an election expense, or a campaign expense."

In urging the cost of a statement be deemed an election expense, real parties argue that EBMUD is effectively a corporate public utility, that such corporations are able to charge the cost of proxy statements for election of its directors, and that the public customers of the utility eventually pay the cost of such statements since all proper expenses are accounted for in rates fixed by the Public Utilities Commission. That being the case, real parties argue, if EBMUD were privately owned, the rate-paying public "would be required to pay those expenses of the candidate statements roughly equivalent to those contained in the ballot information [pamphlet] furnished by" EBMUD.

If real parties contend—as they appear to—that on some theory of equal protection a candidate for the board of directors of a municipal agency is not to be charged for his or her statement in a voter pamphlet because candidates for the board of directors of a corporate utility are not charged for a proxy statement published to shareholders, the contention is totally lacking in merit. Legislative treatment of a privately funded corporate utility entitled under law to a profit based on a reasonable rate of return on its investment, cannot rationally determine the standard of legislative treatment of a public agency not funded by private investment and not operated for profit. If the cost of proxy statements may lawfully be borne by the corporate utility, there is no fundamental compulsion requiring the cost of voter pamphlet statements be borne by the municipal agency. The state may—if as here it elects to do so—rationally provide discriminatory rules affecting the two agencies and the costs associated with the election of its governing body, because there are rational and fundamental distinctions in the classifications created. The

[5]California Constitution, article II, section 2, now article II, section 3, provided in 1974: "The Legislature shall define residence and provide for registration and free elections."

state has done that here—former section 10012.5 governs the cost of voter pamphlet statements for candidates to the board of EBMUD and, as we have seen, requires candidates not claiming indigency to bear that cost.

If it is real parties' contention the regulation denies them or electors access to the ballot, the contention is equally without merit.[6] Here there is no denial of access to the electoral process, as in the case of laws requiring a candidate to satisfy certain conditions in order to place his or her name on the ballot. (See *American Party of Texas* v. *White* (1974) 415 U.S. 767 [39 L.Ed.2d 744, 94 S.Ct. 1296]; *Storer* v. *Brown* (1974) 415 U.S. 724 [39 L.Ed.2d 714, 94 S.Ct. 1274]; *Lubin* v. *Panish* (1974) 415 U.S. 709 [39 L.Ed.2d 702, 94 S.Ct. 1315].)[7] Such requirements constitute "direct burdens not only on candidate's ability to run for office but also on the voter's ability to voice preferences regarding representative government and contemporary issues." (*Buckley* v. *Valeo, supra,* 424 U.S. 1, 94 [46 L.Ed.2d 659, 730].) Here, as in *Buckley,* the government's refusal to pay candidate campaign costs "is not restrictive of voters' rights and less restrictive of candidates'." (*Id.,* [46 L.Ed.2d 659, 730].) The regulation "does not prevent any candidate from getting on the ballot or any voter from casting a vote for the candidate of his choice . . . ." (*Id.,* [46 L.Ed.2d 659, 730].) Our holding in *Knoll* v. *Davidson, supra,* 12 Cal.3d 335 disallows any legitimate claim that former Elections Code section 10012.5 denies real parties access to the ballot.

Finally, if real parties simply contend the cost of the personal qualifications statement is part of the public expense of a "free election" provided for in article II, section 2 (see fn. 5, *ante*), that contention is also rejected. A "free election" does not mandate a free ride from all election campaign expense and particularly not from the pro rata cost of publicizing personal qualifications for the office one seeks.

■ We conclude Elections Code section 10012.5 (now § 10012) allows collection by a local agency of pro rata charges for publishing and

[6]As stated, real parties agree they are not entitled to public financing of their *campaign.* Such issue was put to rest in *Buckley* v. *Valeo* (1976) 424 U.S. 1 [46 L.Ed.2d 659, 96 S.Ct. 612]. It is established in *Buckley* that equal protection does not require government finance campaigns of candidates of minor parties, even though government provides funds to major party candidates.

[7]Even in *Knoll* v. *Davidson, supra,* 12 Cal.3d 335—wherein prepayment charges were a condition to appearing on the ballot—this court did not consider access to the ballot as an issue of constitutional infirmity. The practices there were struck down on equal protection grounds. (*Id.,* at pp. 351-353.)

distributing candidates' statements of qualifications in the voter pamphlet, when such charges and collections are effected after distribution of the pamphlet.

The appellate judgment of respondent court is annulled, and that court is directed to affirm the trial court's judgment in the underlying action.

Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**NEWMAN, J.**—I dissent. The majority opinion states, "A 'free election' [guaranteed by article II, section 3 of the California Constitution] does not mandate a free ride from all election campaign expense and particularly not from the pro rata cost of publicizing personal qualifications for the office one seeks."

By no means does this case involve "a free ride from all election campaign expense." It involves government action, government financing. In my view an election is not free, within the meaning of article II, section 3, if a government is allowed to assess any of its costs to the candidates.

Bird, C. J., concurred.