**In re EASTPORT ASSOCIATES, Debtor.**

**EASTPORT ASSOCIATES, Plaintiff and Cross–Appellant,**

**v.**

**CITY OF LOS ANGELES, Defendant and Appellant.**

**CV 89–4364 TJH, CV 89–3269 TJH. Bankruptcy No. LA 87–5367 AMG. Adv. No. LA 87–2413 BR.**

United States District Court, C.D. California.

March 20, 1990.

James K. Hahn, City Atty., Claudia McGee Henry, Asst. City Atty., Jeri L. Burge, Robert N. Kwong, Deputy City Attys., Los Angeles, Cal., for appellant, City of Los Angeles.

Margaret M. Morrow, Quinn, Kully and Morrow, Robert A. Greenfield, Michael H. Goldstein, Stutman, Triester & Glatt, K. Phillip Knierim, Los Angeles, Cal., for Eastport Associates.

## OPINION

HATTER, District Judge.

## BACKGROUND

Summary of Facts

Eastport Associates ("Eastport") is a California limited partnership, currently in Chapter 11 bankruptcy, which owns approximately 1,500 acres of undeveloped land in the Santa Monica Mountains area of Los Angeles.

In June, 1978, the City of Los Angeles ("the City") approved a change of zone, Ordinance No. 151,208, to permit a 500–unit subdivision on the property. One of the many conditions on the change of zone was a restriction on development over 300 units until a secondary access road was provided over land owned by the County of Los Angeles ("the County").

In October, 1979, Eastport obtained a tentative subdivision map approval from the City, Tentative Tract No. 34300, to develop 500 units on the land. The same secondary access road condition applied to the tentative tract approval.

Neighboring property owners unsuccessfully challenged the rezoning and tentative tract approvals (hereinafter jointly referred to as "development entitlements") in Los Angeles County Superior Court, in *Mandeville Canyon Ass'n v. City of Los Angeles*, Action No. C 250415. Pursuant to a stipulated judgment, the commencement of the initial three-year period for Eastport's de-

velopment entitlements was tolled until June 10, 1981, the date of entry of the judgment.

After the entry of judgment in *Mandeville Canyon*, Eastport attempted to acquire the property necessary to fulfill the secondary access road condition. On June 3, 1982, Eastport offered the County fair market value, as determined by a County appraiser. By March, 1983, Eastport had increased its offer to nine times that value. The County, however, consistently refused Eastport's offers, apparently because it wished to use the County property for a sanitary landfill.

The development entitlements were originally due to expire on June 10, 1984. The City, however, granted Eastport several extensions. The final extensions provided that the development entitlements would expire on June 10, 1987, unless Eastport performed the conditions or posted a bond and filed a final subdivision map with the City for approval.[1]

Eastport did not meet the June 10, 1987 deadline for perfecting its entitlements, and both the rezoning ordinance and tentative tract map expired on that date.

Procedural History

On March 27, 1987, Eastport filed a Chapter 11 Petition in Bankruptcy, listing the property as an asset.

On November 18, 1987, Eastport filed the underlying adversary proceeding in the bankruptcy court. Eastport sought declaratory relief concerning the expiration of its development entitlements under the California Subdivision Map Act ("Map Act"), Cal.Gov't Code §§ 66410–66499.58.

In 1988, the City filed a motion to dismiss and a motion to abstain, and Eastport filed its first motion for summary judgment. In its motion, Eastport asserted that the secondary access road condition created a "development moratorium" preventing the expiration of its subdivision entitlements, pursuant to Cal.Gov't Code § 66452.6. This

section provided that a development moratorium existed to extend development entitlements, for a period not to exceed five years, as follows:

> For purposes of this section, a development moratorium shall include a water or sewer moratorium ... as well as other actions of public agencies which regulate land use, development, or the provision of services to the land ... which thereafter prevents, prohibits, or delays the approval of a final or parcel map. A development moratorium is deemed to exist for purposes of this section for any period of time during which a condition imposed by the city or county could not be satisfied because the condition was one which, by its nature, necessitated action by the city or county, and the city or county either did not take the necessary action or by its own inaction was prevented or delayed in taking the necessary action prior to expiration of the tentative map.

Cal.Gov't Code § 66452.6(f) (Deering 1987) (currently codified at § 66452.6(f) and (f)(1) (Supp.1989)).

The bankruptcy court denied Eastport's motion for summary judgment, concluding that the secondary access road condition did not, by its nature, require City action to be fulfilled and that the County was acting in a private, rather than public, capacity in failing to provide the required access.

The bankruptcy court denied the City's motion to abstain, and, although it granted the City's motion for dismissal, no order of dismissal was entered.

Following the denial of its summary judgment motion, Eastport went to the state legislature and proposed an amendment to Cal.Gov't Code § 66452.6. In 1988, the legislature passed Senate Bill 186, sponsored by Senator Montoya. The Bill amended the Map Act to add, in part, the following provision:

**1.** To perfect its entitlements, a developer is required to file a "final map" prior to the expiration of the tentative map. *See* Cal.Gov't Code §§ 66452.6(d), 66456 (West 1983). Approval of the final map is "a ministerial act" provided that

the final map is in substantial compliance with all the requirements of the tentative map. *Youngblood v. Bd. of Supervisors,* 22 Cal.3d 644, 656, 150 Cal.Rptr. 242, 248, 586 P.2d 556, 562 (1978).

A development moratorium shall also be deemed to exist for purposes of this section for any period of time during which a condition imposed by the city or county could not be satisfied because ... (2) The condition necessitates acquisition of real property or any interest in real property from a public agency, other than the city or county that approved or conditionally approved the tentative map, and that other public agency fails or refuses to convey the property interest necessary to satisfy the condition.

Cal.Gov't Code § 66452.6(f) (West Supp. 1989).

After passage of the amendment, the bankruptcy court granted Eastport's motion for a rehearing and for summary judgment, and denied the City's second motion to abstain. The court held that the amendment applied retroactively to extend Eastport's development entitlements to June 10, 1989, plus an additional period of time during the pendency of this litigation. The court, however, reasserted that Eastport was not entitled to summary judgment under those portions of section 66452.6(f) relied on by Eastport in its original motion. The City filed a motion for reconsideration based on omitted legislative record, which was denied.

The City appeals the bankruptcy court's grant of summary judgment and denials of the City's motions for abstention and reconsideration. Eastport filed a cross-appeal, to be considered only if this Court finds that the amendment to section 66452.6 does not apply retroactively.

## DISCUSSION

### Retroactivity of the Amendment

■ The key issue on appeal is whether Cal.Gov't Code § 66452.6(f), as amended, applies retroactively to extend Eastport's development entitlements. The Court concludes that, although the amendment applies to tentative maps approved prior to the statute's effective date of January 1, 1989, it does not apply to tentative maps that expired prior to that date.

■ A grant of summary judgment is reviewed *de novo* on appeal. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). Where, as here, the facts are undisputed, the Court must determine whether the trial court's interpretation and application of the relevant statute was proper. *Id.* Further, the Court is bound by California rules of construction in its interpretation of the state statute at issue. *See In re Anderson,* 824 F.2d 754, 756 (9th Cir.1987).

It is a well established rule of statutory construction that statutes are presumed to operate prospectively, absent a clear expression of legislative intent to the contrary. *Evangelatos v. Superior Court,* 44 Cal.3d 1188, 1207–08, 246 Cal.Rptr. 629, 640–41, 753 P.2d 585, 596–97 (1988). It cannot be disputed that application of the amendment to section 66452.6(f) to Eastport would be to apply the statute retroactively. " 'A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to adoption of the statute.' " *Id.* at 1206, 246 Cal.Rptr. 629, 753 P.2d 585 (quoting *Aetna Casualty & Sur. Co. v. Indus. Accident Comm'n,* 30 Cal.2d 388, 391, 182 P.2d 159 (1947)). In this case, the amendment alters the legal ramifications of the County's refusal to convey the necessary property interest, which occurred several years prior to passage of the amendment. Thus, if the amendment is to reach Eastport, it must be applied retroactively.

Eastport argues that the presumption against retroactivity does not apply here. First, Eastport contends that, under California law, courts are required to apply land use law in effect at the time of decision. Although the bankruptcy court accepted this argument in its conclusions of law, this Court disagrees.

■ The cases relied on by Eastport stand for the general proposition that where governmental permits are at issue, the reviewing court must apply the law in effect at the time of decision. *Georgia–Pacific Corp. v. Cal. Coastal Comm'n,* 132 Cal.App.3d 678, 696, 183 Cal.Rptr. 395, 406 (1982); *see also Selby Realty Co. v. City of San Buenaventura,* 10 Cal.3d 110, 109 Cal.

Rptr. 799, 514 P.2d 111 (1973) (applicant not entitled to permit if, in interim between administrative denial of permit and appeal, ordinance enacted prohibiting the project); *West Coast Advertising Co. v. City & County of San Francisco*, 256 Cal.App.2d 357, 64 Cal.Rptr. 94 (1968) (trial court's order directing issuance of building permit reversed due to subsequently enacted ordinance prohibiting billboards); *Sunny Slope Water Co. v. City of Pasadena*, 1 Cal.2d 87, 33 P.2d 672 (1934) (zoning ordinance in effect at time of decision determines validity of denial of drilling permit). As stated in *Selby Realty Co.*, "The purpose of the rule is to prevent an appellate court from issuing orders for the construction of improvements contrary to presently existing legislative provisions." 10 Cal.3d at 125, 109 Cal.Rptr. at 809. These cases deal primarily with curtailment of development via a change in zoning or other law, upholding the governmental entity's power to restrict or place additional conditions on construction permits. They are neither factually similar to the case at bar, nor is the underlying policy relevant to Eastport's situation.[2] In sum, this line of precedent is insufficient to support a general rule that existing law must be applied in *all* land use cases.

■ Second, Eastport asserts that the presumption against retroactivity does not apply because the amendment was intended only as a clarification of existing law. Where an amendment to a statute is remedial in nature and merely serves to clarify existing law, no question of retroactivity is involved and the law will be applied to pending cases. *City of Redlands v. Sorensen*, 176 Cal.App.3d 202, 211, 221 Cal.Rptr. 728, 732 (1985). The evidence in this case, however, does not support the conclusion that the amendment to section 66452.6(f) was simply a clarification of preexisting law. The Legislative Counsel's Digest spe-

cifically states that "[t]he bill would *expand* the definition of development moratorium." Senate Bill 186, Stats.1988, ch. 1330, at 3375 (emphasis added). Since the Legislative Counsel is a state official required by law to analyze pending legislation, it is reasonable to presume that the Legislature amended the statute with the intent and meaning expressed in the Counsel's digest. *People v. Martinez*, 194 Cal. App.3d 15, 22, 239 Cal.Rptr. 272, 276 (1987). By its ordinary meaning, the term "expand" indicates a change in the law, rather than a restatement of existing law. In light of the Counsel's comment, Eastport's argument is unpersuasive.

Having concluded that the presumption against retroactivity applies in this case, the Court must determine whether, considering all the evidence, it is clear that the Legislature intended the amendment to section 66542.6 to apply retroactively. Although the Court may properly rely on extrinsic aids, it looks first to the words of the statute to determine legislative intent. *Cal. Teachers Ass'n v. San Diego Community College*, 28 Cal.3d 692, 698, 170 Cal. Rptr. 817, 820, 621 P.2d 856, 859 (1981).

The City contends that because the amendment expressly provides for an effective date of January 1, 1989, this establishes that the Legislature intended the amendment to apply only to tentative tract approvals made after that date. Initially, the Court notes that it does not consider Section 3 of S.B. 186 to be an "express provision" that the statute is effective January 1, 1989. Rather, Section 3 dealt with the circumstances under which Section 2.5 would become operative. *See* Senate Bill 186, Stats.1988, ch. 1330, at 3380. However, even assuming an explicit effective date, such a provision has little significance; California statutes are routinely made effective on January 1 of the year following enactment. *See* Cal. Const. art.

**2.** Eastport cites to only one case that did not involve construction permits *per se, McMillan v. Amer. Gen. Fin. Corp.*, 60 Cal.App.3d 175, 131 Cal.Rptr. 462 (1976). In that case, the court applied a subsequently enacted amendment to the Map Act in reviewing the city council's approval of a tentative map. *McMillan* is distin-

guishable on its facts. Moreover, the courts reference to the existing-law rule is a conclusory footnote. *See* 60 Cal.App.3d at 181 n. 6, 131 Cal.Rptr. at 466 n. 6. Finally, the court noted that the amendment involved was "substantially identical" to the former code section. 60 Cal. App.3d at 180 n. 4, 131 Cal.Rptr. at 465 n. 4.

IV, § 8. Furthermore, the one California case cited by the City, *Estate of Rountree*, 141 Cal.App.3d 976, 192 Cal.Rptr. 152 (1983), does not support the City's argument. In *Rountree*, the relevant legislation specifically provided that it applied "only to the estates of decedents dying on or after January 1, 1981." 141 Cal.App.3d at 979, 192 Cal.Rptr. at 153.

The City further argues that the absence of a retroactivity clause or urgency clause shows that the Legislature intended the amendment to apply only to future tract approvals. The City correctly asserts that the silence of an enactment "is an authoritative indication that the Legislature intended it to have prospective application only." *Nelson v. A.H. Robbins Co.*, 149 Cal.App.3d 862, 870, 197 Cal.Rptr. 179, 184 (1983). However, as the California Supreme Court pointed out in *Evangelatos*, on a number of occasions that court has found retroactive intent despite the lack of an express provision, where there was other "sufficiently clear" evidence of intent. 44 Cal.3d at 1210, 246 Cal.Rptr. at 643, 753 P.2d at 599. Similarly, in this case there are other indicia that the Legislature intended section 66452.6, as amended, to apply retroactively.

Eastport relies heavily on the fact that Section 1 of S.B. 186, which amended section 66413.5 of the Map Act (inapplicable to Eastport's situation), contains an express provision that "it is not the intent of the Legislature to influence or affect any litigation pending on December 31, 1988," and specifically limits the section to territories incorporated after January 1, 1989. Senate Bill 186, Stats.1988, ch. 1330, at 3376 (codified at Cal.Gov't Code § 66413.5 (West Supp.1989)). Similar provisions were omitted from the amendments to section 66452.6 in Section 2 of the bill. Under California rules of statutory construction, when legislation contains a provision that is omitted from another statute in the same or similar subject area, the court may presume a difference in legislative intent. *Allis–Chalmers Corp. v. City of Oxnard*, 126 Cal.App.3d 814, 821, 179 Cal.Rptr. 159, 163 (1981).

While the contrast between the two sections of S.B. 186 is some evidence of legislative intent that the amendment to section 66452.6 be applied retroactively, there are a few reasons why it is not dispositive. First, the two sections of the bill were drafted by different authors. Second, in the cases cited for the above rule of construction, there was no widely recognized presumption operating in the face of statutory silence. *See, e.g., People v. Drake*, 19 Cal.3d 749, 139 Cal.Rptr. 720, 566 P.2d 622 (1977). Finally, the City's expert on legislative history offers a plausible explanation for the inclusion of an express non-retroactivity provision in the amendment to section 66413.5.[3]

Eastport also argues that the legislative history of section 66452.6 reveals an intent to apply the amendment retroactively. Analyzing legislative history, especially on the state level, is often a frustrating—if not futile—task. This case is no exception. There is virtually no record of any discussion or debate about retroactivity in the evidence submitted. Rather, Eastport offers the self-serving declaration of its attorney, Phillip Knierim, who drafted the legislation. Such a post-enactment statement has been accorded little weight by the California Supreme Court. *See Carmona v. Division of Indus. Safety*, 13 Cal.3d 303, 311 n. 8, 118 Cal.Rptr. 473, 478 n. 8, 530 P.2d 161, 166 n. 8 (1975) (declaration of employee involved in drafting legislation not a reliable expression of Legislature's intent). Even if the Court considers the extrinsic evidence offered by Eastport, at most it indicates that the Legislature was aware of Eastport's situation.[4]

---

**3.** As noted in the declaration of Carolina Capistrano, the language in section 66413.5 regarding pending litigation was added upon the deletion of language stating the new legislation was declaratory of existing law. Since clarifying legislation is applied to pending litigation, *City of Redlands*, 176 Cal.App.3d at 211, 221 Cal.Rptr.

at 732, the change in intent was logically expressed via the "pending litigation" provision.

**4.** The City's extrinsic evidence is also of little assistance. The declaration of Senator Herschel Rosenthal, expressing his understanding that the amendment did not apply retroactively, can-

Fortunately, the Court need not rely exclusively on these extrinsic aids: The Court is principally persuaded that the Legislature intended retroactive application because any other interpretation would render portions of section 66452.6 meaningless. A statute must be construed to give its provisions meaning and effect, *East Bay Mun. Util. Dist. v. Appellate Dep't*, 23 Cal.3d 839, 843, 153 Cal.Rptr. 597, 600, 591 P.2d 1249, 1252 (1979), and constructions that defy common sense are to be avoided, *Cal. Mfrs. Ass'n v. Public Utilities Comm'n*, 24 Cal.3d 836, 844, 157 Cal.Rptr. 676, 680, 598 P.2d 836, 840 (1979).

The City's position that the amendment applies only to tentative tract approvals made after the amendment's effective date of January 1, 1989, leads to absurd results. As amended, section 66452.6 provides that the development moratorium of subdivision (f)(2) (refusal of public agency to convey property) shall extend the tentative map for a maximum of five years, "but not later than January 1, 1992." Cal.Gov't Code § 66452.6(b), (f) (West 1983 & Supp.1989). Similarly, the amendment provides for extensions of a map during the pendency of a lawsuit concerning the moratorium for up to three years, "but in no event beyond January 1, 1992." Cal.Gov't Code § 66452.6(b)(2) (West Supp.1989). As admitted by the City, all subdivision entitlements have an initial life of three years from the date of approval. Cal.Gov't Code § 66452.6(a) (West 1983). Any map approved after January 1, 1989, would already survive until January 1, 1992—without any extensions or moratoria. Thus, under the construction urged by the City, the amendment would not actually offer any relief to a subdivider and would be a

nullity. The Court simply cannot accept such a construction. Accordingly, the Court concludes that the Legislature must have intended the amendment to apply retroactively to tentative tract approvals made prior to January 1, 1989.[5]

This conclusion, however, does not end the Court's inquiry; there remains the question of how far back the amendment should reach. Eastport's tentative tract map approval was granted in 1979, and expired on June 10, 1987, prior to commencement of this litigation. While there is significant evidence that the amendment applies to tentative tract approvals made prior to January 1, 1989, there is no indication in the record that the amendment was intended to, in essence, "revive" tentative maps that expired prior to the passage of the bill. To the contrary, the *only* reference to retroactive application of the amendment in the legislative history is the statement that "[i]f the subject map expired in 1987, it is not clear that this bill will offer any relief for the Los Angeles situation." Floor Analysis on S.B. 186, Senate Third Reading 3 (August 10, 1988).[6] Because an intent to have the amendment apply to tract approvals that expired prior to the statute's effective date does not clearly appear, the Court cannot assume such an intent. *See Evangelatos*, 44 Cal.3d at 1217–18, 246 Cal.Rptr. at 648, 753 P.2d at 604. Accordingly, the amendment does not apply to Eastport, and the bankruptcy court's ruling on this issue is reversed.

Abstention

■ The second issue raised by the City is whether the bankruptcy judge properly denied the City's motion to abstain.

This argument is without merit. To the extent that local ordinances are inconsistent with the Map Act, they are preempted by the Act. *See Griffis v. County of Mono*, 163 Cal.App.3d 414, 209 Cal.Rptr. 519 (1985); *Friends of Lake Arrowhead v. Bd. of Supervisors*, 38 Cal.App.3d 497, 113 Cal.Rptr. 539 (1974).

---

not be considered by the Court. *See Cal. Teachers Ass'n v. San Diego Community College*, 28 Cal.3d 692, 699–700, 170 Cal.Rptr. 817, 821, 621 P.2d 856, 860 (1981) ("In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it."). To the extent that the City's lobbyist's declaration merely expresses her personal opinion, it is equally unreliable.

**5.** The City argues that, whatever its effect on the tentative tract approval, the amendment cannot extend the life of the zone change ordinance.

**6.** This statement is repeated in the Conference Committee Report of August 10, 1988, and framed as an inquiry in the Assembly Committee Report of August 3, 1988.

The Court believes that it does not have jurisdiction to decide this issue. The district court, by order entered June 2, 1989, denied the City's motion, and on June 10, 1989, the City filed a notice of appeal to the Ninth Circuit. The filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed. *Donovan v. Mazzola,* 761 F.2d 1411, 1414 (9th Cir.1985). Because the abstention order was interlocutory in nature, there is some question whether the City's appeal was proper. *See, e.g.,* 28 U.S.C. § 1292(b) (requiring certification for interlocutory appeals). If the order is nonappealable, the court retains jurisdiction. *Hoffman v. Beer Drivers & Salesmen's Local Union No. 888,* 536 F.2d 1268, 1272 (9th Cir.1976). However, the propriety of the City's appeal is not an issue before this Court. Accordingly, the Court assumes that it lacks jurisdiction to reconsider the issue of abstention.[7]

Reconsideration

■ The final issue on appeal by the City is whether the bankruptcy court erred in denying the City's motion for reconsideration. The Court reviews a denial of a motion for reconsideration for abuse of discretion. *Balla v. Idaho State Bd. of Corrections,* 869 F.2d 461, 464 (9th Cir.1989).

The City moved for reconsideration on the ground that Eastport had omitted relevant portions of the legislative record. However, the City fails to show that it could not have discovered this evidence by due diligence prior to summary judgment, or that the bankruptcy court's ruling was based on a manifest error of law or fact. In general, the City presents scant authority for reversal of the order. The bankruptcy court's denial of the motion is, therefore, affirmed.

Eastport's Cross–Appeal

■ Eastport cross-appeals the bankruptcy court's denial of summary judgment based on Cal.Gov't Code § 66452.6(f) and (f)(1).[8] Applying a *de novo* standard of review, *see Ashton v. Cory,* 780 F.2d at 818, the Court affirms the bankruptcy court's decision.

The subsections relied on by Eastport in its appeal provide as follows:

■ (f) For purposes of this section, a development moratorium includes a water or sewer moratorium ... as well as other actions of public agencies which regulate land use, development, or the provision of services to the land ... which thereafter prevents, prohibits, or delays the approval of a final or parcel map.

■ A development moratorium shall also be deemed to exist ... for any period of time during which a condition imposed by the city ... could not be satisfied because ...:

(1) The condition was one which, by its nature, necessitated action by the city ..., and the city ... did not take the necessary action....

Cal.Gov't Code § 66452.6(f) (West Supp. 1989).

The Court is unpersuaded that the "public agencies" provision of subsection (f) applies here. This portion of the statute speaks directly to "other actions of public agencies *which regulate land use, development, or the provision of services to the land.*" *Id.* (emphases added). Granted, the County is a public agency. Its actions with regard to Eastport, however, were unrelated to any regulatory function. For this reason, the County's failure to convey the necessary property interest is distinguishable from failure to provide water or sewer services. Eastport contends that, in refusing to provide the access, the County acted to further its governmental objective of waste disposal. Yet, as the City aptly notes, the fact that the County contem-

---

7. Even if the Court had jurisdiction, since the district court entered an order denying the city's motion, the City is, in effect, asking the district court to reconsider its previous ruling. The City, however, fails to meet the standards for reconsideration. *See* Local Rules for the Central District of Cal. 7.16.

8. These provisions were originally relied on by Eastport in its first motion for summary judgment, prior to the 1988 legislative action. They remain substantively unchanged by the amendment.

plated use of its land for a landfill does not elevate the County's refusal to sell to a regulatory action. Rather, as found by the court below, the County was acting in a proprietary capacity. Accordingly, this section offers Eastport no relief.

Similarly, the Court need look no further than the words of subsection (f)(1) to find it inapplicable to Eastport's situation. Eastport argues that because the City had the power to obtain the right of way from the County, while Eastport did not, the condition "necessitated" action by the City. This argument ignores the plain import of the section. The secondary access road condition did not, *"by its nature," require* action by the City. The City was under no obligation to obtain the access, and, had the County been willing, Eastport could have met the condition without any assistance from the City.

The Court's interpretation of this provision is buttressed by the legislative history. The Assembly Committee's analysis of the proposed bill refers to the situation where a city conditions development on connection with the city sewer system, but fails to secure funds to create sufficient capacity in the system. Assembly Local Government Committee Report 1 (April 30, 1985). In the cited example, the developer is independently incapable of meeting the condition: the city must take action. Such is not the case here. Thus, Eastport is not entitled to judgment as a matter of law under section 66452.6(f)(1), and the bankruptcy court properly denied summary judgment.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is REVERSED IN PART, and AFFIRMED IN PART.