TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

| | : | |
| OPINION | : | |
| | : | No. 24-401 |
| of | : | |
| | : | October 9, 2024 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

---

The HONORABLE BRIAN DAHLE, MEMBER OF THE STATE SENATE, has requested an opinion on a question relating to municipal utility districts.

**QUESTION PRESENTED AND CONCLUSION**

Does Public Utilities Code section 12820 require all members of a municipal utility district's "suitable security force" to have the peace officer authority and powers specified in that statute, including its related requirement to comply with the applicable standards of the Commission on Peace Officer Standards and Training (POST)?

No. The peace officer authority and powers and POST-standards compliance specified in Public Utilities Code section 12820 are required only as to security force members whom the utility district's general manager designates as "security officers," and whose primary duty is to protect district property and the persons on it. Not every member of a district's security force must be designated as a security officer or possess peace officer powers and authority.

**BACKGROUND**

Cities, counties, and certain other entities may form a municipal utility district.[1] The Public Utilities Code authorizes a municipal utility district to provide district inhabitants with a panoply of services including water, power, garbage, sewer, and transportation.[2]

Public Utilities Code section 12820 is part of the Municipal Utility District Act, enacted in 1951.[3] Section 12820 was added in 1974 at the request of the East Bay Municipal Utility District.[4] At the time, the District was opening over 50,000 acres of its property to public recreation, including a 95-mile trail, and anticipated greater security needs. To ensure the safety of the public, the District would need—among other things—armed peace officers to make felony arrests.[5] Section 12820 provides that a "[municipal utility] district may employ a suitable security force," and that district employees whom the district manager designates as "security officers" "shall have" specified peace officer "authority and powers."[6] It further provides that such designated "security officers" and the district "shall" comply with rules of the Commission on Peace Officer Standards and Training (POST).[7]

---

[1] Pub. Util. Code, §§ 11531, 11561, 11504.

[2] Pub. Util. Code, § 12801.

[3] Pub. Util. Code, § 11501; Stats. 1951, ch. 764, p. 2212, § 11501. This was not the first law to authorize creation of a municipal utility district. (See *East Bay Municipal Utility Dist. v. Railroad Commission of State of California* (1924) 194 Cal. 603, 606 [referring to municipal utility district law enacted in 1921].)

[4] Stats. 1974, ch. 1119, p. 2401, §§ 2 (enacting former Public Utilities Code section 12819) & 4 (reciting security-related urgency for legislation because of East Bay Municipal Utility District opening property to public recreation). The section remains substantively the same today. (Stats. 1975, ch. 769, p. 1788, § 2 [renumbering enacted statute as Public Utilities Code section 12820]; Pub. Util. Code, § 12820.)

[5] Digest from Assembly Committee on Criminal Justice file, Assem. Bill No. 3797 (1973-1974 Reg. Sess.), as amended August 12, p. 2.

[6] Pub. Util. Code, § 12820, subd. (a). We will refer to the "authority and powers" more simply as powers.

[7] Pub. Util. Code, § 12820. POST is an agency "charged with establishing standards of physical, mental, and moral fitness for peace officers" and "provides education and training for peace officers." (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 285 [citing Pen. Code, §§ 13500, 13510, subd. (a), 13503, subd. (e)].)

24-401

## ANALYSIS

We are asked to clarify whether section 12820 requires all members of a municipal utility district's "suitable security force" to possess peace office powers and conform to POST training requirements, or whether a district may employ a "suitable security force" that contains personnel who are not designated as "security officers" and who have not attained peace officer status or the concomitant responsibilities for POST compliance. At first glance, "security force" may sound like a synonym or a plural form of "security officers." If that were so, the security force would have security officers only. But as discussed in greater detail below, a careful review of the statutory language, as well as its purpose and context, reveals that a "suitable security force" may include personnel other than those designated as "security officers." And unlike "security officers," these other personnel need not have peace officer authority and powers.

In construing Public Utilities Code section 12820, we employ established rules of statutory interpretation to determine the Legislature's intent.[8] The starting point is to consider the statute's words because they are generally the most reliable indicator of its intended purpose.[9] We consider the "ordinary meaning" of the relevant words, as well as "related provisions, terms used in other parts of the statute, and the structure of the statutory scheme."[10] If the relevant words are subject to more than one reasonable interpretation, we then consider extrinsic sources including the statute's purpose, legislative history, and public policy.[11]

Section 12820 begins by stating that a municipal utility district "may employ a suitable security force."[12] The next sentence provides that district employees designated as "security officers" "shall have" the peace officer powers described in Penal Code section 830.34(a), which empowers certain "security officers"—those whose primary duty is protecting property and people—to make arrests and (if the district has so authorized) to use firearms.[13] Lastly, the statute provides that "[e]very security officer"

---

[8] *Prang v. Los Angeles County Assessment Appeals Bd.* (2024) 15 Cal.5th 1152, 1170.

[9] *Ibid.*

[10] *Ibid.*

[11] *Ibid.*

[12] Pub. Util. Code, § 12820, subd. (a).

[13] This cross-referenced statute, Penal Code section 830.34, provides in relevant part:

> The following persons are peace officers whose authority extends to any place in the state for the purpose of performing their primary duty or when making an arrest pursuant to Section 836 as to any public offense with respect to which there is immediate danger to person or property, or of the

(continued…)

3

"shall conform" to POST standards.[14]  Does section 12820 allow a district to employ a "suitable security force" that includes personnel who are not designated as "security officers," and who are therefore not required to have peace officer powers and conform to POST standards?

The first sentence of section 12820 uses "may," and each successive sentence uses "shall."  The Public Utilities Code directs that the word "may" is interpreted as permissive and the word "shall" is interpreted as mandatory, unless the context requires otherwise.[15]  Applicable case law also generally assigns those same meanings to these words when they are in close proximity to each other, as here.[16]  Seeing nothing in the

---

> escape of the perpetrator of that offense . . . .  Those peace officers may carry firearms only if authorized and under terms and conditions specified by their employing agency.
>
> (a) Persons designated as a security officer by a municipal utility district pursuant to Section 12820 of the Public Utilities Code, *if the primary duty of the officer is the protection of the properties of the utility district and the protection of the persons thereon.*

(Pen. Code, § 830.34, italics added.)  Penal Code section 836, referenced above, sets forth peace officer powers of arrest.  (See Pen. Code, § 836.)

[14] In its entirety, Public Utilities Code section 12820 states:

> (a) A district may employ a suitable security force. The employees of the district that are designated by the general manager as security officers shall have the authority and powers conferred by subdivision (a) of Section 830.34 of the Penal Code upon peace officers. The district shall adhere to the standards for recruitment and training of peace officers established by the Commission on Peace Officer Standards and Training pursuant to Title 4 (commencing with Section 13500) of Part 4 of the Penal Code.
>
> (b) Every security officer employed by a district shall conform to the standards for peace officers of the Commission on Peace Officer Standards and Training. Any officer who fails to conform to these standards shall not continue to have the powers of a security officer.

[15] Pub. Util. Code, §§ 5, 14.

[16] *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542; see also *Andrews v. Metropolitan Transit System* (2022) 74 Cal.App.5th 597, 605 ("It is a well-settled principle of statutory construction that the word 'may' is ordinarily construed as permissive, whereas 'shall' is ordinarily construed as mandatory, particularly when both terms are used in the same statute").

4

24-401

statutory context or otherwise to indicate a contrary meaning, we therefore apply a permissive meaning to "may" and a mandatory meaning to "shall."

Applying a permissive meaning to "may," section 12820's opening sentence means that a district has authorization—but no obligation—to employ a "suitable security force."[17]  Applying a mandatory meaning to "shall," the statute provides that any employees who are designated by the district's general manager as "security officers" are required to have peace officer powers, as specified, and POST compliance is required for such officers.

In other words, a district is authorized to hire a "suitable security force"; and peace officer powers and POST compliance are required for those employees of the security force who have the "security officer" designation.  But is a district authorized to hire, as part of its "suitable security force," other personnel who are not designated as "security officers"?  Put another way, does the statute require that the entirety of the "suitable security force" be comprised solely of designated "security officers" with associated peace officer powers?  Or does the statute allow the security force to include personnel without such powers?

First, we observe that the terms "security force" and "security officers" are similar, but not exactly the same.  And when the Legislature uses different terms, as it has here, they are presumed to have different meanings.[18]

Second, section 12820 is revealing by what it does not state.  It does not state that all members of a district's "suitable security force" shall have peace officer powers with POST compliance.  Instead, it provides that those security force members who are designated as "security officers" shall have such powers.  This strongly suggests that the statute's authorization of a "suitable security force" means that a district may determine for itself which level of security personnel would be best-suited to its needs—and that its security force may, but is not required to, have designated "security officers" with peace officer powers.[19]

---

[17] Pub. Util. Code, § 12820, subd. (a).

[18] *Folke v. Pulliam* (2023) 96 Cal.App.5th Supp. 18, 27 ("When the Legislature uses different words as part of the same statutory scheme, courts presume those words have different meanings").

[19] The terms in the clause "suitable security force" are not defined individually or together in the statute, nor elsewhere in the codes.  Common dictionary meanings of "suitable" are "adapted to a particular use," "proper," and "able" or "qualified." (Merriam-Webster online dictionary available at https://www.merriam-webster.com/dictionary/suitable (as of Oct. 7, 2024); see *Humane Society of U.S. v.*

(continued…)

5

The rest of the statute and the broader statutory scheme similarly support this reading.  Section 12820 removes peace officer powers from security officers if they fail to conform to POST standards.[20]  But the statute does not state that such an "officer," who had been designated as a "security officer," can no longer be part of the "security force."  This all suggests authority to maintain a security force that includes both "security officers" with concomitant POST qualifications and responsibilities, and personnel who are not POST-qualified peace officers.

Having considered the words of the statute itself, we now turn to the statute it cross-references, Penal Code section 830.34.  That statute provides that persons designated as "a security officer" under section 12820 qualify as peace officers if their "primary duty" is protecting utility district property and people on it.  So even where security force members are designated as "security officers" by a district's general manager, such officers only have peace officer powers and authority to the extent that their primary duty is protecting utility district property and people on it.[21]  This further qualification also supports the inference that some members of a district's suitable security force—i.e., those members whose primary duty is *not* protecting district property and the persons on it—need not satisfy the peace officer requirements imposed on a "security officer."

To resolve any doubt that may remain on the meaning of section 12820, we turn to its purpose as evidenced by the legislative history.  The East Bay Municipal Utility District requested enactment of the statute because the District was opening large areas of its property to public recreational use, and sought security powers beyond those it already had, namely the power to make felony arrests.[22]  The legislative record does not reflect an

*Superior Court* (2013) 214 Cal.App.4th 1233, 1251 ["The dictionary is a proper source to determine the usual and ordinary meaning of words in a statute"].)

[20] Pub. Util. Code, § 12820, subd. (b) (requiring "[e]very security officer employed by a district" to conform to POST standards for peace officers and providing that "[a]ny officer" who fails to do so "shall not continue to have the powers of a security officer").

[21] See Pen. Code, § 830.34, subd. (b), *ante*, fn. 13.

[22] See *ante*, fn. 4.  The legislative record reflects the District's view that it could already appoint officers with power to make misdemeanor arrests, but not felony ones, under Penal Code section 836.5.  (See "Assembly Criminal Justice" document, submitted by East Bay Municipal Utility District to Assembly Committee on Criminal Justice [answering questions in digest for hearing June 13, 1974].)  The referenced statute continues to provide that public officers authorized by ordinance may make misdemeanor arrests.  (Pen. Code, § 836.5, subd. (a); see also Pub. Util. Code, §§ 11909 ["The acts of the board shall be expressed by motion, resolution, or ordinance"], 11503 [defining "board" to mean board of directors of municipal utility district].)  Although the District

(continued…)

6

24-401

intent to remove the District's authority to employ other modes of security (namely, non-peace-officer personnel) as part of its suitable security force.[23]  After all, a district might wish to maintain a security force to monitor activities and contact law enforcement as needed.[24]  Nothing in the legislative record advocates for, or analyzes the consequences of, removal of a district's then-existing authority to hire security personnel who do not have the requested peace officer powers, as might be expected if the statute had intended to do so.  "It is a cardinal rule of statutory construction that courts cannot read into a law a provision that does not exist and is not shown to be the intent of the lawmakers."[25]  For the foregoing reasons, we conclude that a municipal utility district is authorized to include personnel on its security force who do not have peace officer powers with related POST responsibilities.

<hr/>

did not raise it then, a separate basis for a district to provide other lesser modes of security derives from the broad powers of a district's board, which date back at least to the 1951 enactment of the Municipal Utility District Law.  (See, e.g., Stats. 1951, ch. 764, pp. 2218-2219, 2229, 2231, enacting Public Utilities Code sections 11883 [designating district board as legislative body which "determines all questions of policy"], 11884 ["All matters and things necessary for the proper administration of the affairs of the district which are not provided for in this division shall be provided for by the board"], 11886 [board determines and creates "positions as are necessary properly to carry on the functions of the district"], 12721 [authorizing contracts and "stipulations of any nature whatsoever . . . to employ labor, and to do all acts necessary and convenient for the full exercise of the powers granted in this division"], 12801 ["[D]istrict . . . may do all things necessary or convenient to the full exercise of the powers herein granted"]; cf. *Sacramento Municipal Utility Dist. v. Spink* (1956) 145 Cal.App.2d 568, 582 [issuing writ to issue bonds to fund district power project because board determined it was in public interest, and board's "determination is conclusive"].)

[23] See *ante*, fns. 4, 22.

[24] This comports with input we received from the East Bay Municipal Utility District and Sacramento Municipal Utility District.  (Letter from East Bay Municipal Utility District, Office of General Counsel, to Deputy Attorney General Catherine Bidart, June 6, 2024, on file; Letter from Sacramento Municipal Utility District Senior Attorney Randall J. Hakes to Deputy Attorney General Catherine Bidart, June 17, 2024, on file.)

[25] *Frazier v. Superior Court of Los Angeles County* (2022) 86 Cal.App.5th Supp. 1, 11.

24-401